*306
 
 Ruffin, C. J.
 

 The prisoner lost no advantage by not objecting to the admissibility of the testimony of the Manlys’, as the counsel for the State, in the opening, stated an expectation to prove, that the killing was upon express malice. To that purpose, that evidence was material, if the jury, from it and other circumstances, inferred that Flowers was the person, or one of the persons, whose life the prisoner threatened; and it would be the stronger, the more frequently the thi-eat was uttered, and the greater the length of time through which it was repeated, as tending to show that the prisoner’s mind had brooded over vengeance, and that he deliberately purposed to have the other’s blood.
 

 But, after getting in the evidence in that way, the Solicitor, in using it before the jury, distinctly admitted that the threats were not directed towards the deceaséd, and he could not well have contended otherwise, in the absence of any evidence of ill-feeling between the parties, and after full evidence of the friendly relations that had subsisted between them. He, however, urged, that though the deceased was not the object of them, those threats, (amongst other things} “ showed the motive by which 'the prisoner was actuated when he killed the deceased.” And in reference to that position, the Court, after expressing the opinion, that, according to the evidence of the lad, Robert Flowers, there was a legal provocation, directed the jury, that the testimony of the Manlys’ did not show malice towards the deceased in particular; but that,-nevertheless, “they might consider it, in connexion with the other circumstances, to show, whether the prisoner acted upon the provocation, or with malice.” The question before this Court is, whether that direction was right or not? We think it was not; because that was not such evidence as would authorise the •finding, that the killing was upon malice, and not upon the provocation, and, therefore, that it was erroneous to leave the point to the jury on it.
 

 
 *307
 
 As the question comes before this Court, it is to be assumed that Mrs. Flowers was discredited, and that the case, as to the incidents of the combat, stood upon the evidence of the son. Upon that state of the case, the Court told the jury, that there was legal provocation, which palliated the killing to man-slaughter, provided, only, the prisoner acted on it. If he did not, then indeed, it followed, that the killing was, in a legal sense, on malice against the prisoner, and amounted to murder, as there was no circumstance of accident or necessity to excuse or justify it. The essential enquiry, therefore, was, whether there was any motive for the mortal assault, besides that arising out of the admitted provocation.
 

 Upon that question, the circumstances, that the prisoner was approaching the deceased, when the latter rose from big chair, and that he did not, when he threw the chair, touch the prisoner, nor, as the witness believed, intend to do so ; and that the deceased in throwing the chair fell, and the prisoner rushed on him, and stabbed him while down; and also, that the deceased got up and retreated, and the prisoner then pursued him and continued to stab him; those circumstances, together with the prisoner’s deportment and language to the family of the deceased and respecting the homicide, were very properly submitted to the jury, as material to be weighed by them, upon the enquiry just mentioned. Upon their weight legally, or as authorising an inference of fact, as to the state of the prisoner’s heart at the time of giving those stabs, it is not our province now to give an opinion ; and we wish to be understood as carefully refraining from the intimation of one. We only mean to say, that those were proper subjects for the consideration of the jury upon the point before them. But the instruction added to those circumstances this other, as also proper for their consideration on that enquiry; namely, that a year before, and also a month before the ^homicide, the prisoner declared his intention to kill two or three men — it being
 
 *308
 
 at the same time admitted, that the prisoner had no reference to the deceased, but that he meant other men. Now, that is saying, that it may be inferred, notwithstanding a present sufficient provocation, that the prisoner killed one person on express malice — a previous design, or set purpose to do so — because, a year and a month previously, he declared that he had a mind to kill another person. The declaration of an intention to kill another, certainly cannot stand higher, as evidence of an unprovoked purpose to kill Flowers, than the actual killing of that other. If we suppose, then, that the Manlys’ had been offered to prove, that, a year, and a month before this killing, they had seen the prisoner wantonly stab a man to death, it is clear that evidence could not have been received. The one transaction would be entirely distinct from the other. It would be altogether irrelevant to the point, whether the prisoner stabbed the deceased ; and not less so to the enquiry, on what motive did he stab him. If proved, it would, of itself, be
 
 no
 
 evidence of this killing, or the
 
 quo animo,
 
 on which the Court could leave a case to the jui’y ; and it would be equally inconclusive, and therefore calculated to mislead the jury, when left to them, in aid of other evidence, on those points. It would, in effect, be giving the prisoner’s general character in evidence against him; or even worse than that, as this is particular evidence (which the prisoner would not be prepared to answer) of an evil disposition towards certain persons formerly, as the foundation of a presumption, that the prisoner afterwards killed another person
 
 malo animo,
 
 instead of having done so, on an immediate provocation proved.
 

 It is true, that there are cases, in which the killing is murder, though there was no intention to kill the deceased in particular. But they all stand upon entirely different grounds from the present. The cases alluded to are those, in which a person shoots at one man upon malice towards him, and happens to miss him, and kill
 
 *309
 
 another ; or if he lay poison for one, and another ignorantly, take it, and die; or discharge a gun in a crowd, and kill some one, though not directed to any one in particular ; or, with the intent to steal it, shoot at an ox and kill a man ; such cases ai’e, all, murder. But in each of them, there is, at the instant of the act done, from which the death ensues, an intent to commit a felony, and an intent to commit it by that very act. The law, therefore, holds the perpetrator responsible for all consequences, which flowed from that act, and treats him as if he had actually intended to do, what he happened, in execution of that purpose, to do. But, this man, Flowers, was not killed in any effort of the prisoner to slay either of the other men, against whom he had been harboring malice, as declared by him to the Manlys. The enquiry, in this case was, therefore, the strictly limited one, whether the killing was upon malice to the deceased. That could not rationally be inferred from an evil disposition towards other persons, however long and firmly cherished by the prisoner ; and therefore, according to our law of evidence, and mode of trial in criminal cases, that evidence ought not to have been received; or, after it was received under the circumstances in this case, it ought not to have been given in charge to the jury as matter, which tended to repel the presumption, that the prisoner, in killing Flowers, acted on the provocation, which he then received.
 

 Per Curiam. Ordered that this opinion be certified to the Court below that they may proceed, &c.