Ruffin, C. J.
 

 The Court finds no error in the record.It is the undoubted province and duty of the Court to inform the jury, upon the supposition of the truth of facts, as being agreed or found by the jury, what the degree of the homicide is.
 
 Fost. Cr. L. 255. State
 
 v.
 
 Walker,
 
 N. C. T. R. 231. If it were not so, there would be no rule of law, by which a killing could be determined to be murder, but the whole matter of malice or alleviation would fall to the discretion and deoision of the jurors in each particular case, and there would be no mode of reviewing it, so as to reverse the decision, though erroneous. There could be no tyranny more greivous, than that of leaving the citizen to the prejudices of jurors, or the discretion of judges, as to what ought to be deemed an of-fence, which should, or should not, deprive him of his life. The only seourity for the accused is for the law to define
 
 a priori,
 
 what shall constitute a crime, and, in the case of capital punishment, when it shall be inflicted. It is ope of the praises of our law, that such have always been
 
 *435
 
 its provisions. The presiding Judge, therefore, did not transcend his power, but performed simply his duty, in directing the jury upon the point, whether the killing here amounted to murder or manslaughter, taking the facts to be as deposed to by the witnesses. The truth of the evidence, as far as appears, was not indeed contested on the part of the prisoner. On the contrary, he assumed it to be true, when he prayed an instruction upon it, in general terms, that this was one of those cases of mutual combat, in which the law holds a killing to be but manslaughter. The only question, then, is, whether the Court ought to have given the instruction asked, or whether that given was wrong ; for an error, in either respect, would entitle the prisoner to a
 
 venire de novo.
 
 But we are of opinion, that there is no such error. For, upon the supposition that the evidence was true, the Court holds clearly, that the prisoner was guilty, not merely of manslaughter, but of murder, in point of law; and that the malice, necessary to constitute the killing murder, was implied by the law and was properly declared by the Court. It is true, there was evidence given of express malice, that is, of a previous ill-will of the prisoner towards the deceased and threats of killing him, and some evidence tending to show, that the prisoner, up to the period of the homicide, harbored such ill-will and went to the place for the purpose of killing Taylor or doing him great harm. It may be, that the evidence on that point, might have been thought by the jury to establish the inferences, to which it tended. Whether it was or not, it is purely a matter of fact, whether, after such an interval between the threats and the killing, the prisoner acted on the old grudge on this; occasion, as well as whether such previoüs malice existed, and neither the presiding Judge nor this Court has authority to form an opinion upon it. His Honor, indeed, left it to the jury, whether the evidence was true or not, and gave his instruction upon the hypothesis that the jury
 
 *436
 
 found it to be true. They have said it was; but that only goes to the facts of the previous ill-will and threats, because to those alone did the witnesses depose. They did not, and could not, testify to the continuing of the ill-wiil up to the homicide, and that the prisoner acted-on it in slaying. That is not capable of being directly proved by witnesses, but is an inference as to the actual state of the party’s mind and intention, upon which'the act of kill-i ig was done ; and it was, therefore, proper for the jury and not the Court to draw it. If the case depended on that enquiry, and the killing would not be, or, rather, was not murder, without any reference to the evidence of express malice, we should hold, it was erroneous to direct the jury, that the prisoner was guilty of murder, without submitting to the jury the enquiry-, as to the continuing existence of the express malice. But we conceive that, independent of that point, and without any regard to such parts of the evidence as are relevant to it simply, the prisoner is guilty of murder upon the facts and circumstances attending the homicide, by themselves implying malice. From the admitted fact of the homicide the law presumes malice, and the matter of extenuation must arise out of the evidence of the killing itself, or must be otherwise proved by the prisoner. Here the whole turns on the testimony of Edmund Taylor, the only witness present at the fact, and upon the number and nature of the wounds-That must be assumed to be true, because the Judge founded his instruction upon the supposition, that all the evidence was true. Taking it to be true, the prisoner cannot deduce from it any alleviation of guilt, short of murder. That, which was insisted on for him, is not tenable : namely, that it was a case of mutual combat, and therefore the offence was extenuated There is no such rule of law ; for, although in many cases of mutual combat, a killing is but manslaughter, because done upon sudden heat, yet there are many others, in which a killing in such
 
 *437
 
 a combat is murder, because the circumstances show, that the slayer was from the beginning actuated by malice, or in other words, intended to take or endanger the life of the other by an undue advantage in an unequal combat. And the rule on the point was, we think, laid down with substantial correctness in this case. Here was provoking language and behaviour on both sides ; so that it would matter not, w’hich gave the first blow, if the fight waá fair and intended by the prisoner, at the first, to be fair. But, if one, upon a sudden quarrel, draws his sword and makes, a pass at the other, whose sword is then undrawn, and then the latter draw his sword and a combat ensue in which he is killed, it is murder; for. by making his first pass, when the adversary’s sword was not drawn, the assailant shewed he sought the other’s blood, and the endeavor of the other to defend himself, which he had a right to do. will not excuse the killer.
 
 Foster
 
 295. Mr. East-states the rule to be, that, if on any sudden quarrel blows pass, without any intention to kill or injure materiall}', and in the course of the scuffle, after the parties are heated by the contest, one kill the other with a deadly weapon, it is but manslaughter ; but that, when an attack is made with a dangerous weapon, the party assailing, without sufficient legal provocation, must put the party assaulted upon an equal footing in point of defence, at least at the onset, 1
 
 East. P. C.
 
 242,3. So, Russell says,' that, although the use of a deadly weapon after the combat began will not make the offence more than manslaughter, if the combat was equal at the onset, yet the conclusion is different, if there be any previous intention, or preparation, to use such a weapon in the course of the affray. 1
 
 Russ. Cr. L.
 
 446, 497. In those positions he is supported by the cases' cited by him. In
 
 Wliiteby’s case,
 
 1 Lewin’s Cr. cases, 173, Mr. Justice Bayley states the law thus: when persons fight on fair terms, where life is not' likely to be at hazard, if death ensue, it
 
 U
 
 
 *438
 
 manslaughter: and if persons meet originally on iair terms, and, after an interval, blows having been given, a party draws in the heat of blood a deadly instrument and inflicts a deadly injury, it is manslaughter
 
 only;
 
 but if a party enter a contest, dangerously armed, and fights under an unfair advantage, though mutual blows pass, it is not manslaughter, but murder. In
 
 Anderson’s
 
 qase, the prisoner and Levy quarrelled and went out to fight, and the latter was found to be stabbed in many places and died immediately, and it appeared that the prisoner had a knife, and that no body else could have given the stabs, and the jury were told, it was murder, if the prisoner used his knife privately from the beginning, or, if, before the fight began, he placed the knife so that he might use it during the affray and used it accordingly. These principles and cases fully establish the correctness of the direction in this case. The prisoner, without exhibiting.his knife or giving any notice of it, prepared the knife before hand, or, at all events, drew it before any blow had passed, and in the dusk of the evening he pressed on the deceased, an infirm and weakly old man, who retreated eight or ten yards, and, as soon as the prisoner got near enough to strike, he gave the mortal stab. That he must have drawn the knife at the beginning, or, at least, before any blow on either side, is absolutely certain, if Edmund Taylor told the truth ; for the witness did not see the prisoner draw the knife, nor, indeed, see it at all until after the killing, and he says the stroke by the prisoner immediately followed that given by the deceased, and that the deceased then exclaimed, that he was killed. That the deceased made defence as he did, can make no difference ; for, against such an assault, as Mr. Justice Foster says, he had a right to endeavor to defend himself. It does not appear, that the weapon, with which' the deceased struck, was of a nature, that was likely to do much bodily harm, but, from the description of it and
 
 *439
 
 its effects, quite the contrary. It is the case, therefore, of an attack by an armed upon a feeble unarmed man, in which the latter endeavored throughout to avoid the conflict, and the former gave a mortal blow, with a deadly weapon, as soon as he was able to give a blow at all— the weapon not being drawn in the course of the scuffle, but being prepared before any actual scuffle, or a blow on either side. The impulse to give the mortal stroke was not excited, during and by a combat. It is clear, that the prisoner sought and took that undue advantage in the fight, which prevents the law from attributing the act of killing his fellow man to human frailty and the sudden transport of passion, excited by the provocation of a blow or during an affray, and lays it to that malignity of heart which seeks the life of another without any legal provocation. The Court, therefore, holds that in point of law there was no error in either the instruction given, or, of course, in refusing that asked.
 

 It is the province of the Court, in which the trial takes place, to judge of the truth or sufficiency of the causes assigned for a motion for a continuance or removal of a trial. It must be so ; else it would be in the power of a prisoner to postpone a conviction indefinitely, however clear his guilt, by making affidavits with the requisite matter on the face of them. The temptation to perjury is so strong in capital cases, that it is an established practice on the circuits to distrust affidavits after one continuance or removal, and scrutinize them narrowly. The presiding Judge must dispose of such applications in his discretion; and, as in other cases of discretion, his decisions cannot be reviewed here, but are final.
 

 Per Curiam. Ordered to be certified accordingly to the- Superior Court of Law of Richmond County.