Pearson, J.
 

 It is the duty of the presiding Judge to find the facts necessary to present a question of evidence. He hears the testimony; his decision in regard to tue facts is not the subject of review. Consequently, the conclusion to which he arrives in regard to the facts, from the evidence heard by him, should be set out in the bill of exceptions, or statement of the case, and not the evidence. In some cases there is not much difference between the evidence and the facts; in others, there is much difficulty in saying, from the evidence, what are the facts.
 

 Taking the testimony of Margaret Hart to constitute the facts in regard to the question of evidence, there can be no doubt that the declarations of the deceased come fully within the rule
 
 *256
 
 under wbicb deatb-bed declarations are admissible. Indeed, we understand from the argument here, that the only objection was, because the witness did not remember whether the declarations about the manner of his death-blow were before or after he said he should die. It was all in one conversation of short duration ; from the detail given of it, it could not have exceeded ten minutes, and there is no suggestion that there was any material change in the condition of the deceased, or that he became suddenly worse. So it made no kind of difference, whether what he said in regard to his condition, was before or after ho made the statement. In either case, he was manifestly under the fear of impending death.
 

 There was no error in refusing to give the instructions asked for, because there was no evidence tending to prove the facts upon which the request was based, and the Court should never give instructions upon a state of facts that is not presented by the evidence in the case. The evidence was, “ that when the deceased went out into the yard, the prisoner drew his knife, and came at him; that he took up a mop-broom, and tried to defend himself, backing towards the persimmon tree, &c.; the mop fell from the handle, and as the deceased bent down over it, the prisoner gave the fatal cut with the knife.” This evidence by no means supports the fact “ that the deceased was
 
 pressing upon and striking at the prisoner."
 

 His Honor was not bound to give instructions upon a mere hypothetical case, although, in the course of his charge, he did in effect make the hypothesis, and give the instructions asked for.
 

 To bring a case within the operation of the rule,
 
 “falsum in
 
 uno?
 
 falsum in omnibus,”
 
 as expounded in State v. Jim, 1 Dev. 509, the oath must be wilfully and corruptly false, in regard to a matter material to .the issue. So that the jury would feel .bound to convict the witness if he was then on his trial for perjury. Although the distance from the house to the persimmon tree might have been ,a matter, in regard to which the
 
 *257
 
 counsel desired to have correct information, or about which he felt at liberty, upon cross-examination, to test the ac■curacy of the judgment of the witness, yet, the fact wascollateral, and was not material to the issue, within the meaning of the rule. So that, however much the conduct of the witness, in saying that she did not know the distance, because she had not measured it, and her flippancy in saying, that she could not tell whether it was a quarter of a mile or less, were calculated to prejudice her in the opinion of the jury, it was not a matter that called for the exclusion of her testimony; and it was properly left to the jury, as affecting her credit, and not her competency.
 

 “
 
 Ad questiones facti non respondent judices ; ad questiones legis non respondent jumtores.”
 
 “Although the jury, if they will take upon them the knowledge of the law, may give a general verdict, yet it is dangerous for them so to do; for, if they do mistake the law, they run into the danger .of an attaint.” •Coke Litt. 228. “ The jury may render a special verdict when they doubt the matter of law, and therefore choose to leave it to the determination of the Court, though they have an unquestionable right of determining upon all the circumstances, an finding a general verdict, if they think proper so to
 
 hazard a breach of their oaths
 
 ; and if their verdict be notoriously wrong, they may be punished, and their verdict set aside at the suit of the king, though not at the suit of the .prisoner.” — 4 ¡Blackstone’s Com. 361.
 

 We concur with his Honor in the opinion he expressed as ■to the right-of a jury to disregard the instruction of the Judge upon a matter of law. It is true, when the issue is one of fact, it involves a -question of law, and in order to render a general verdict, the jury must make the application of the law to the facts. This puts it in the power of the jury to find a verdict in opposition to the charge of the Court, as to the law involved in the issue-; .and the jury may, in a criminal case, by an abuse of this power, find a verdictcf “ not guilty,” the effect of which is an absolute acquittal, under the rule that no one shall be
 
 *258
 
 twice put in jeopardy, &c.; but because they have the power, it by no means follows that they have the right to do so. They, in like manner, have the power to disregard the facts as they believe them to be from the evidence; and the effect of the verdict of “not guilty” is the same; but in either case it is a violation of their duty as jurors. Indeed, the case is not as strong where they find against the facts established by the evidence, as where they find against the law given them in charge; for the jurors ai;e presumed to be men of good sense, and it is a part of their duty to pass on the credibility of witnesses. But they are not presumed to be “men learned in the law,” and it is ho part of their duty to pass upon the correctness of the Judge’s' opinion as to the law; for that, an appeal to a higher tribunal is provided, and such an assumption on the part of the jury necessarily defeats the due and orderly administration of justice. Accordingly, juries have seldom been guilty of such a breach of duty, except in times of high political excitement.
 

 We had considered this question “ at rest,” and that there had been an acquiescence and concurrence of opinion as to the correctness of this doctrine among the profession, “ time whereof the memory of man runneth not to the contrary.” But two instances, before the present, have oecurro 1 in this State, where a different doctrine was contended for, within the recollection of either member of this Couit. One, before the act of 1844, in the times of the excitement about nullification, upon an indictment of the editors of a newspaper for a libel. The other, since that time, under very peculiar circumstances.
 

 One of the counsel for the prisoner informed us that he entertained a different opinion upon the subject; and although he was compelled to admit that the general impression of the profession, and the practice of our Courts, had been to the contrary, yet he believed that, upon principle and authority, particularly since the act of 1844, juries not only had the power, but the right, to decide the matter of law involved in the issue ; and he called our attention to a very elaborate opinion in State v.
 
 *259
 
 Croteau, in 1849, by the Supreme Court of Vermont, 23 Verm. R. 14, in which it is so held..
 

 We listened attentively to his learned and ingenious argument, but it failed to remove from our minds a deep conviction that such cannot be the law. By the ancient law, jurors were at liberty to find the facts from their own personal knowledge. Now, it is conceded on all hands, that they must find the facts from the evidence only ; and it is to us equally clear that they must take the law from the Court only. The evidence is the means provided by which they are to know the facts: the instruction of the Court, that, by which they are to know the law.
 

 While preparing this opinion, I met with one with which Hak-GRAVE, in his notes to CoitE, favored the profession. It is so learned and convincing that I will content myself by adopting it as a part of this opinion.
 

 “ In respect to my own ideas on this subject, they are at present to this effect.
 

 On the one hand, as the jury may, as often as they thimk fit, find a general verdict, I therefore think it unquestionable that they so far may decide upon the law as well as fact: such a verdict necessarily involving both. In this I have the authority of Littleton himself, who hereafter writes, thal if
 
 the inquest will take upon them the knowledge of the law upon the
 
 matter,
 
 they may give their verdict generally.”
 
 — Post. sec. 368, and fol. 228.
 

 But, on the other hand, I think it seems clear, that questions of law generally and more properly, belong to the Judge ; and that, exclusively of the fitness of having the law expounded by those who are trained to the knowledge of it by long study and practice: this appears from various considerations.
 

 I. If the parties litigating agree in their facts, the cause can never go to a jury, but is tried on a demurrer; it being a rule, and 1 believe without exception, that issues in law are determined by the Judges, and only issues of fact are tried by a jury— Ante. 71 b.
 

 
 *260
 
 II. Even when an issue in fact is joined, and comes before a jury for trial, either party, by demurring to evidence, which includes an admission of the fact to which the evidence applies, may so far draw the cause from the cognizance of the jury, for in that case the law is reserved for the decision of the Court from which the issue of fact comes, and the jury is either discharged, or at the utmost only ascertains the damages. — Ante. 72 a. Doug. Rep. 127, 213 ; Puller’s Nisi Pri-us, 2d edit. 313.
 

 III. The jury is supposed to be so inadequate to finding out the law, that it is incumbent upon the Judge, who presides at the trial, to inform them what the law is ; and as a chock to the Judge in the discharge of .this duty, .either party may, under the Statute of Westminster, the 2d, c. 31, make his exception in writing, to the Judge’s direction, and enforce its being made a part of the record, so as afterwards to found error upon it. See Post, 2d Inst. 426; Trials per Pais, 8th ed. 222, 466; Case of Fabrigas and Mostyn, in xi State Trials; Case of Monrey and others v. Leach, 3 Burr. 1742 ; Buller’s Law of Nisi Prius, 2d ed. 313.
 

 IY. The jury is ever at liberty to give a special verdict, the nature of which is to find the facts at large, and leave the conclusion of law to the Judges of the Court, from which the issue comes. Formerly, indeed, it was doubted whether, in certain cases, in which the issue was of a very limited and restrained kind, the jury was not bound to find a general verdict. But the contrary was settled in Downman’s .case, 9, Co. 11, b, and the rule now holds both in criminal and civil cases, without exception. See Post 227 ; 6 Staunf. PL c. 165 a; Major Oneby’s case, 2d Lord Raymond 1494.
 

 V. Whilst attaints, which still subsist in law, were in use, it was hazardous in .a jury to find .a general verdict where the .case was doubtful, and they were apprised of it by the Judges ; because, if they mistook the law, they were in danger of an attaint. Post 228 .a; Hob.. 227; Vaugh. 144; 2 Hal. Hist. PI. C. 310; Gilh. Com. PL, 2d ed. 128.
 

 
 *261
 
 YI. If the jury find the facts specially, and add their conclusion as to the law, it is not binding.on the judges; but they have a right to control the verdict, and declare the law as they conceive it to be. At least this is the language of some, most respectable authorities. Staunf. Pl. C. 165 a; Plowd. 114 a. b. 4 Co. 42 b; Hal. Hist. Pl. C. v. 1, p. 471, 476, 477 and v. 2, p. 302.
 

 YII. The Courts have long exercised the power of granting new trials in civil cases, where the jury find against that which the judge trying the cause, or the Court at large, holds to be law, or Ayhere the jury find a general verdict, and the Court conceives that, on account .of difficulty of laAY, there ought to bo a special one. King v. Poole, Cas. B. R. temp., Hardwicke 26. Though, too, in criminal and penal cases, the Judges do not claim such a discretion against persons acquitted, the reason I presume is in respect of the rule that
 
 nemo bis punitur aut vexatur pro eodem
 
 delicto, or the hardship which Avould arise from allowing a person to be twice put in jeopardy for one of-fence ; and if this be so, it only shows that on that account an exception is made to a general rule. 4 Black. 8th ed. 361; 2 L. Raym. 1585, 2 Stra. 899; 4 Co. 40 a, and Wingate’s Maxims 695. But see 6 T. R., 638, where the rule laid down is, that in crimes above misdemeanor, there can be no new trial at all, but that in misdemeanor it may be granted to examine again in either guilt or innocence.
 

 Upon the whole, as my mind is affected with this interesting subject, the result is, that the immediate and direct right of de-ckling upon questions of law is entrusted to the Judges; that in a jury it is only incidental; that in the exercise of this incidental right, the latter are not only placed under the superinten-danee of the former, but are in some degree controllable by them; and therefore that, in all points of law arising en a trial, juries ought to shew the most respectful deference to the advice and recommendations of judges. In favor of this conclusion, the conduct of juries bears, ample testimony; for, to
 
 *262
 
 their honor, it should be remembered, that the examples of their resisting the advice of a Judge, in points of law, are rare, except where they have been provoked into such an opposition, by the grossness of his own misconduct, or betrayed into an unjust suspicion of his integrity, by the misrepresentation and ill practice of others. In civil cases, particularly where the title to real property is in question, juries almost universally find a spe--cial verdict as often as the Judge recommends their so doing; and though, in criminal cases, special verdicts are not frequent, it is not from any averseness to thorn in juries, but, from the nature of criminal causes, which generally depend more upon the evidence of facts than any difficulty of law. Nor is it any' small merit in this arrangement, that, in consequence of it, every person accused of a crime is enabled, by the general plea of not guilty, to have the benefit of a trial, in which the Judge and jury are a check upon each other ; and that this benefit may be always enjoyed, except in such small offences as are left to the summary jurisdiction of a Justice of the Peace; which exception, from the necessity of the times, is continually increasing, but which, however, cannot be too cautiously extended to new objects. Thus considered, th“ distinction between the office of Judge and jury seems to claim our utmost respect. May this wise distribution of power between the two long continue to flourish, unspoiled, either by the proud encroachments of ill-designing judges, or the wild presumption of licentious juries.”' Co. Litt., vol. 1, p. 155 b. n. (5.)
 

 As to the ease cited in the argument, it is met by the case of United States v. Battiste, 2 Sum. Rep., 240, and Commonwealth v. Porter, 10 Metc. 268. These cases are noticed in the case from Vermont, and although opposed with much labor and ingenuity, are by no means satisfactorily answered.
 

 Such having been the law and the practice, and course of our Courts, the next question is, was the act of 1844 intended, or does it have the effect of changing the law ?
 

 
 *263
 
 The act is in these words; “ In all jury trials, the parties or their counsel have a right and shall be allowed to argue to the jury, their whole case, as well of law as of fact.”
 

 The argument is, for what purpose argue the law to the jury, unless they have the right to decide upon the law ?
 
 JErgo,
 
 the jury have the right, and it was the intention of the Statute to confer it.
 

 The right, if conferred, is by inference, merely- — therefore, if any other reason for allowing the law to be argued to the jury can be suggested, except that of an intention to change the law, the inference must fail, because it would be indecent to suppose that the Legislature intended, in a covert and insidious way, to make so important a change in the law — a change which, they were aware, would strike every member'of the bar as well as the bench with utter surprise, if the act can be accounted for in any other manner.
 

 Indeed, we cannot admit the supposition of an intention to make so great an alteration in the law by inference merely. If such had been the intention, the bill would have set it out in so many words, so as to give opportunity for that full discussion which the importance of the subject would necessarily have elicited. But the reason for passing the Statute is obvious without the necessity of making any inference about it.
 

 To give a general verdict, three things are necessary. The jury must learn the facts from the evidence; they must learn the law from the Court, and then make the application of the law to the facts. Now, it was known that juries were greatly assisted by the argument of Counsel in understanding the evidence and learning the facts therefrom; and it seemed to the Legislature they might also derive some, if not the same degree of, assistance from the argument of Counsel, in enabling them to understand the charge of the judge, and in learning the law therefrom, so as to be the better able to make the application and return their verdict. No good reason was seen why the jury should not have the benefit of this assistance.
 

 
 *264
 
 That such was the only purpose of the Statute is manifest from the words used and its unpretending general appearance. That such was the light in which every body regarded it, is also manifest, from the fact that more than ten years elapsed before it was ever suggested that it could be made to have any other meaning, and, by inference, be made to have any other effect. But for this universal impression, it is not to be believed that the Counsel of some one of the many criminals, who have been convicted and executed during that time, would not have thought it to be his duty,
 
 provided the law allowed it,
 
 to appeal from the opinion of the Judge, which he knew was against him, to the better knowledge or more tender mercies of the jury.
 

 The argument proves too much. The case from Vermont and the others cited confine the supposed right of juries to State cases, but this Statute embraces
 
 u all jury trials.”
 
 So, if the right to decide the law is conferred in State cases, it is conferred in all, as well civil as criminal.
 

 After this, the inference, in order to make the right of juries effectual, must be extended — so as to take from the Court the. right to give a new trial in any case, because the jury disregarded the instructions; for they had a right to do so : Otherwise, why should the law be argued to them?”
 

 There is no error. This opinion will be certified to the end that sentence may be pronounced according to law.
 

 Judgment, affirmed.