## STATE v. G. W. CRANE.

### *Homicide—Evidence.*

The prisoner and deceased quarreled, and both evinced a willingness to fight, but were prevented by other persons—the prisoner went off, but came back, when the deceased presented a loaded gun and commanded him to stand—the prisoner went into a house near by, but out of sight of deceased, and procured his gun and returned to the deceased, who immediately fired upon and slightly wounded the prisoner, and then sat his gun down—the prisoner then shot and killed deceased. *Held*,

1. That the prisoner was at least guilty of manslaughter.

2. That it was not error in the Court to charge the jury that under the circumstances of this case, if they believed the evidence, the prisoner was guilty of manslaughter.

(*State* v. *Kennedy*, 91 N. C., 572; *State* v. *McNeill*, 92 N. C., 812: *State* v. *Vines*, 93 N. C., 493, cited and approved).

This was an INDICTMENT FOR MANSLAUGHTER, tried before *Montgomery, Judge*, and a jury, at Fall Term, 1886, of YAN-CEY Superior Court.

One McAlister, witness for the State, testified that he was at Franklin McCorny's with Wiley Riddle, the deceased, the defendant, and several other parties; the deceased was very drunk and had a gun shaking it around; the prisoner was also drunk; one Brackins told the deceased to put up his gun as he was too drunk, that he might shoot himself or some of his friends; they then took the gun from him and locked it up in a room; presently the deceased had a knife; they took the knife away from him also; he complained that they had hurt his hand, and blamed the defendant for it; the deceased and the defendant passed the lie and got up to fight, but were prevented by those present. This was in the porch of the house. Dinner was announced; McCorny and wife, Brackins and wife, went to dinner; Crane, the defendant, went off about the same time; the deceased got a hammer and broke into the room where the gun had been put; he came out on the ground, then back on the porch with his gun; about this time Crane, the defendant came in sight; the deceased pointed his gun at him and said; "Damn you, stand!" Crane went behind the house in the direction of the kitchen and "holloed"—"I have got as good a shot gun as any man," or "as many shot guns as any man," and came back directly with his gun around towards the porch where the deceased was; the deceased said—"stand, damn you!" and fired and hit the defendant; the deceased stepped towards the room a little from Crane and set his gun down; did not

see him make any effort to reload his his gun; Crane stepped so he could see the deceased and said—"Damn you, I will show you how to shoot me," and fired; the deceased turned and went into the room, and said—"I am shot—am killed," and fell on the bed; Crane and myself went in; the prisoner got to him first and hit him one lick with his fist, and I prevented him from striking him again; told him he had killed him; he told me—"no, he was not killed," but that he, prisoner, "was killed," and showed me his breast; there was a shot hole in his shirt, and some blood; he took his gun and went off.

The deceased lived two or three minutes after he was shot. The witness described the kitchen as being behind the house and twenty-five or thirty yards distant; the character of the deceased was that of a dangerous man; deceased would have weighed one hundred and twenty-five pounds; the prisoner was a larger man and some twenty odd years old.

Wm. McCury testified: The deceased was killed at my house; the deceased had a gun; the prisoner and one Brackins helped me to take the gun away from him, and I locked it up. I went to the kitchen; in a little while I saw the deceased have the gun on the porch; don't think the prisoner was in the kitchen. In a little while Crane, the prisoner, came in the kitchen and got his gun down out of the rack. I spoke to him and said: "Wash, what are you going to do with that gun? put it down;" he said, "no man should snap a gun at him," or " shove a gun in his breast;" in a minute saw smoke, or flash of a gun, towards defendant; the prisoner was sorter getting up and he fired; I went around the house and the deceased was holding to the bed dying; there was about two seconds between the fires; the deceased had his gun in a shooting position when I saw him in the porch; the prisoner had a skinned place on his breast, looked like two shot; there was nothing that hemmed the prisoner in the kitchen; he could have gotten away

from the kitchen without exposing himself to the deceased on the porch; the deceased had the character of being a dangerous man.

There was evidence on the part of the defence that the prisoner had three small shot holes in his left breast the next day after the difficulty, and that the deceased had the character of being a dangerous man when drinking, and that the prisoner was a man of good character. The Court instructed the jury that if they believed the evidence to be true, they should find the prisoner guilty. The defendant excepted.

Verdict of guilty, and judgment, from which the prisoner appealed.

The *Attorney-General* for the State.
No counsel for the defendant.

MERRIMON, J. The evidence was plain and direct. It seems that it was not questioned, and obviously the jury believed it. Accepting it as true, and taking the most favorable view of it for the prisoner, he was certainly, at the least, guilty of voluntary manslaughter. The deceased had given him legal provocation; but he slew him—not of necessity—not to save his own life or himself from enormous bodily harm, but unnecessarily in the heat of blood, if not of deliberate purpose. At the time the prisoner fired his gun at and slew the deceased, he was free from present danger, and might easily have abandoned further conflict without exposing himself to danger, and this he must have seen, but he showed no disposition to desist from the fight. On the contrary, he manifested a passionate, if not a deliberate and wicked purpose, to kill.

No man is justified in taking the life of his adversary, if he can avoid it, if he can escape without exposing his own life to serious peril, or exposing himself to great bodily

harm. He cannot kill of choice—he can only be justified when he kills of necessity. *State* v. *Kennedy,* 91 N. C., 572; *State* v. *McNeill,* 92 N. C. 812.

The evidence was simple and direct—there was no conflict in it—no alternative aspects of it to be submitted. It was the province of the jury to believe or disbelieve it, and the Court might, as it did, tell them that if they believed it to be true, the prisoner was guilty. If the evidence was true, the law drew the conclusion as to the offence. *State* v. *Vines,* 93 N. C., 493.

There is no error.

No error. Affirmed.