STATE v. CARY QUICK.

(Filed 1 April, 1909.)

**1. Evidence—Dying Declarations.**

Declarations of deceased as to the manner in which wounds were inflicted by defendant, causing his death within a few hours · thereafter and at or about the time he said he knew he was going to die, are competent as dying declarations.

**2. Evidence—Impeaching—Witnesses—Character.**

It is harmless error, if erroneous at all, to ask witness, who testified to the good character of defendant, on trial for murder, whether he would consider one who had acted as defendant had admittedly done, as a man of good character, it being a test of witness' conception of what constituted good· character.

**3. Manslaughter—Deadly Weapon—Malice Presumed—Burden of Proof—Evidence—Justification—Mitigation.**

When it is established or admitted 'that defendant, on trial for murder, intentionally killed deceased with a deadly weapon, malice is presumed, and the burden of proof is on defendant to satisfy the jury of the truth of such testimony as justifies his act or mitigates it to manslaughter.

**4. Evidence—Murder—Manslaughter—Instructions—Harmless Error.**

When it appears that the jury has discarded the plea of self-defense, contended for by defendant on trial for murder, and it is clear, from the evidence and admissions, that defendant was guilty of murder in the second degree at least, the defendant cannot be prejudiced by a charge to the jury by the trial judge, under which he was convicted of a lessor degree of homicide.

**5. Same—Self-defense—Excessive Force—Questions for Jury.**

Evidence that defendant was assaulted by deceased with a pistol, and, acting in the heat of blood, but not exclusively in his own defense, shot a greater number of times than was necessary for self-defense, and killed him, is sufficient to sustain a verdict of manslaughter, and the question of excessive force is one for the jury.

**6. Instructions—Extracts from Opinions—Harmless Error.**

> While the wisdom of reading lengthy extracts from the opinions of the Supreme Court to the jury is doubted, as their reasoning is generally based upon the facts of each case, and the facts may differ, in this case there could be no error to defendant's prejudice, as the extracts were of a general character and the law charged with such clearness as not to be misunderstood.

WALKER, J., concurs in the result. CONNOR, J., concurs in opinion of WALKER, J.

INDICTMENT for murder, tried before *Long, J.,* and a jury, at September Term, 1908, of RICHMOND.

The defendant, Cary Quick, was convicted of manslaughter. The other defendants named in the bill were acquitted. From the judgment of the court the defendant, Cary Quick, appealed.

The facts are stated in the opinion of the Court.

*Attorney-General* for the State.

*Morrison & Whitlock, A. S. Dockery, John P. Cameron* and *W. M. Kelly* for defendant.

BROWN, J. The defendant was tried for murder in the second degree and convicted of manslaughter. It appears from the evidence set out in the record that this defendant, with Lone Knight, Ebb Quick and Lauder Quick, had an altercation with Jule Combs, at the latter's saloon in Richmond County, over the price of a pint of gin. There were several pistol shots fired, and Combs was wounded, and in consequence thereof died.

1. The defendant excepts to the ruling of the court below admitting the dying declarations of the deceased. There can be no question that the declarations are pertinent and material, as they tend to prove that all the defendants were participants in an unjustifiable assault upon the deceased at the time he was shot.

The wife of the deceased testified concerning her husband's condition: "He was weak and continued to grow weaker. He could not help himself at all. He remained in bed, after being brought home, until he died. He said that he was going to die—about the first word he said after he came home; he said this several times. There was nothing said by him about his getting well during this time." On cross-examination witness stated

that her husband "said he was going to die, soon after he got there; said he could not live. About two hours after he got there the doctor came. He said he was going to die before the doctor came. After the doctor came he did not say anything about dying, because the doctor gave him something to put him to sleep. Cannot be certain whether he told how he was shot before or after he told he was going to die."

The deceased was shot about 6 or 7 o'clock P. M. on Sunday, 11 November, 1906, and died at 12 o'clock that night.

Under our precedents, we think it was proper to admit the declarations of the deceased as dying declarations. *State v. Peace,* 46 N. C., 251; *State v. Whitt,* 113 N. C., 716.

2. Witness Adams, for defendant, testified that his general character is good. On cross-examination by the solicitor, the court permitted the following question: "Witness is asked if he thinks that a man who would visit a barroom on Sunday afternoon, carrying concealed on his person a pistol, and remain at the barroom, drinking whiskey, etc., would entitle such a person to be considered a man of good character."

We see no objection to the question. The evident purpose was to test the witness' conception of what constituted good character, and not to prove a bad character by affirmative evidence of specific acts. Assuming that it was objectionable in form, it was harmless, as the defendant had already testified as a witness in his own behalf, and admitted the very facts embodied in the inquiry.

3. The defendant excepts to the instructions of the court placing the burden of proof upon the defendant to justify the killing of the deceased, contending that the burden of the issue never shifts from the State to satisfy the jury beyond a reasonable doubt upon the entire evidence in the case of the defendant's guilt. For this position the learned counsel cite *Stewart v. Carpet Co.,* 138 N. C., 60, and *Board of Education v. Makeley,* 139 N. C., 31, and insist that the rule upheld in those cases is applicable here.

We do not think those precedents have any application in an indictment for homicide. The position of counsel is one of the propositions laid down by *Judge Wilde* in his dissenting opinion

STATE *v.* QUICK.

in the well-known case of *Commonwealth v. York,* 9 Metc., 93, and was taken by counsel before this Court in *S. v. Willis,* 63 N. C., 26. But the proposition was repudiated in that case, and the doctrine reiterated that in all indictments for homicide, where the intentional killing is established or admitted, the law presumes malice from the use of a deadly weapon, and the defendant is guilty of murder (now in second degree), unless he can satisfy the jury of the truth of facts which justify his act or mitigate it to manslaughter. The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him. This rule has been uniformly adhered to by this Court in indictments for homicide, and it was reiterated in the recent case of *State v. Worley,* 141 N. C., 764, where the cases are cited.

The defendant, Cary Quick, was examined in his own behalf, and not only admits the intentional killing, averring that he did it in self-defense, but states that he fired at the deceased four times.

His Honor's ruling was in accord with the unvarying precedents in this State, which have ever followed the common law. 1 East P. C., 279. The exception cannot be sustained.

3. The defendant contends that the court erred in instructing the jury "that if the jury found there was a mutual affray between deceased and Cary, into which they both willingly entered, and during the progress of the fight Cary shot and killed deceased, in the transport of passion aroused by the fight, but without malice, it would be no more than manslaughter, but if Cary had satisfied the jury that he was without fault in entering the fight, and that he fired the fatal shot in self-defense, agreeably to the principles governing this defense, set out hereafter, to acquit him."

We see nothing in this instruction of which the defendant can reasonably complain. The charge of the court is very full, and presented clearly and fairly to the jury the defendant's plea of self-defense and the evidence in support of it.

Suppose the court erroneously submitted to the jury a view of the case, not supported by evidence, whereby the jury were permitted, if they saw fit, to convict of manslaughter instead

of murder, what right has the defendant to complain? It is an error prejudicial to the State, and not to him. His plea of self-defense had been fully and fairly presented to the jury and rejected by them as untrue. What, then, was the duty of the jury, if there was no evidence of manslaughter? Clearly, under the law, they should have convicted the defendant of murder in the second degree. How, then, can the defendant, his plea of self-defense having been wholly discarded by the jury and the burden being upon him to reduce the offense to something less than murder in the second degree, reasonably complain of a charge, however erroneous in that respect, which permitted the jury to convict of a lesser degree of homicide?

The appellant, in all cases, civil as well as criminal, is not only required to show error, but that he was injured by it.

The deduction seems to us to be founded in the very logic of the law that evidence which is amply sufficient to support a conviction of murder must of necessity be sufficient to sustain a conviction of manslaughter. But, independent of that, there are phases of the evidence which warranted a verdict for manslaughter and not for murder, and therefore his Honor's charge is unobjectionable.

There is evidence tending to prove that the quarrel was a "drunken brawl," started suddenly by an altercation over some gin; that the deceased whipped out his pistol and shot at defendant about the same time, if not a little sooner, than defendant shot at him; that the parties fought willingly, suddenly and upon equal terms. This brings the case within those precedents which hold that if two men fight upon a sudden quarrel, and one kills the other, the chances being equal, this constitutes manslaughter. *State v. Massage,* 65 N. C., 480; *State v. Hildreth,* 31 N. C., 429; *State v. Brittain,* 89 N. C., 481; *State v. Ellick,* 60 N. C., 450. Killing, the result of passion produced by fight, is manslaughter. *State v. Miller,* 112 N. C., 878; *State v. Crane,* 95 N. C., 619. It is further held that if a person upon whom an assault is made with violence resent it immediately by killing the aggressor, and act therein in heat of blood and not exclusively in his own defense, it is manslaughter. *State v. Tackett,* 8 N. C., 210; *State v. Roberts,* 8 N. C., 350; *State v. Smith,* 77 N. C., 488; *State v. Barnwell,* 80 N. C., 466.

There are phases of the evidence, and reasonable inferences which may be drawn from it, which support this theory.

Again, there is evidence tending to prove that while the defendant may have entered the affray unwillingly and have fired at first in self-defense, yet he continued to fire, as is contended, unnecessarily. The defendant himself admits that he was the only person who shot deceased, and that he fired four times at him. There are circumstances in evidence which surround the occurrence from which it may be fairly inferred that the defendant's repeated firing was unnecessary, and possibly further wounded the deceased after the latter had ceased to fire and was disabled.

It is well settled that if the defendant entered the fight in self-defense and, without malice, used unnecessary force, which resulted in death, it is manslaughter, and that the question of excessive force is one peculiarly for the jury.

4. The defendant excepts because the judge read to the jury lengthy extracts from opinions delivered by this Court in certain cases. We doubt the wisdom of such practice, as the language and reasoning of an opinion is generally based upon the facts of that particular case, and the facts may differ; but we are unable to see that any appreciable harm was done to the defendant by the extracts read as a part of his Honor's charge in this case, as they were of a very general character.

The plea of self-defense, and the evidence in support of it, was put before the jury by the court with such clearness that the jury could not possibly have been misled by any of the extracts read to them.

The jury having repudiated the defendant's plea of self-defense, he is fortunate, upon the evidence adduced, that he escaped with a conviction for manslaughter only.

Upon a review of the entire record, we find

No Error.

WALKER, J., concurring in result: My assent to the conclusion reached by the Court in this case is based upon the opinion, which I entertain, that there is some evidence of manslaughter. I cannot concur in the view taken by the Court in its opinion that a defendant in a criminal action can, under any circum-

stances, be convicted of and punished for an offense where there is no evidence to support the verdict, even though the offense of which he is convicted may be embraced by the general charge in the indictment, and may therefore be considered by the jury where there is evidence that will sustain a conviction. It is said that if the jury rejects the defendant's plea of self-defense they should convict him of murder in the second degree, if there is no evidence of manslaughter. Conceding this to be true, provided the jury have repudiated the plea of self-defense as unsupported by evidence, why is it not equally true that, as we *know* the jury have acquitted the defendant of murder, either in the first or the second degree, they should have acquitted him entirely if there had been no evidence of manslaughter? The conclusion that they should thus have acquitted him is, indeed, sustained by the better reason, for they have actually and certainly acquitted him of murder in any degree, and their refusal to acquit altogether may have been caused by the erroneous instruction of the court as to manslaughter. Can it be that, if there is no evidence of the offense for which the defendant has been convicted, the verdict can be justified, because he could have been convicted of a higher offense and the jury has merely failed to acquit him? In a prosecution for a homicide, where the jury acquit of murder, there are only two other verdicts they can render, namely, "guilty of manslaughter" or "not guilty." If there is no evidence of manslaughter, is it not more accurate to say that they should acquit, or is there a rule of law that they may convict of manslaughter, even though there is no evidence of that offense having been committed, merely because they could have convicted of the higher felony? I do not think so, and for this reason I am unable to concur in all that is said in the opinion of the Court. I think that a conviction must be founded not alone upon the charge preferred in the indictment, but upon some evidence sufficient in law to establish it.