## STATE v. ROBERT GRAINGER and MISSIE MARLOW.

### (Filed 20 December, 1911.)

### 1. Murder—Premeditation—Evidence.

Upon a trial for murder, evidence that the prisoners, a man and a woman, were heavily drinking, that they fired a gun, having procured shells for the purpose, indiscriminately at houses along the road, to the fear of the occupants and those whom they met; that the male prisoner made threats against the life of the deceased, concurred in by the woman, who afterwards identified and pointed out the deceased, whereupon the male prisoner killed him with the gun he was carrying, is sufficient, upon the question of premeditation to sustain a verdict of murder in the first degree.

2. **Murder—Instructions—Collateral Matter—Prayers Refused—Substantial Compliance.**

Upon evidence tending to show that the prisoners, a man and woman, tried for murder, had been drinking heavily and were selling whiskey; that the male defendant assaulted a person with brass knucks, and afterwards unlawfully killed another person, the deceased, with a gun he was carrying, a charge of the court which clearly states for what offense the prisoners were tried, restricting the trial to that for murder, is a substantial compliance with a requested prayer for instruction, "that the prisoners were not on trial for selling whiskey nor for making an assault with the knucks as independent facts," and that the jury should not consider this evidence in arriving at their verdict.

3. **Murder—Deadly Weapon—Second Degree—Presumptions—Instructions.**

The killing of a human being with a deadly weapon raises the presumption of murder in the second degree, and a request for instruction which assumes a less offense, under conflicting evidence, should be refused.

4. **Murder—Motive—Burden of Proof.**

The burden is not upon the State to show the motive of one aiding and abetting the committing of murder by another, when the evidence is otherwise sufficient, though the case may be strengthened by showing motive when the evidence is circumstantial.

5. **Instructions—Contentions Stated by Judge—Appeal and Error.**

It is the duty of the court to state the contentions of the parties which are supported by the evidence, and his thus doing so is not error.

BROWN, J., dissents.

APPEAL from *Whedbee, J.,* at July Term, 1911, of COLUMBUS. The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General T. W. Bickett and Assistant Attorney-General George L. Jones for the State.*

*Lewis, Lyon, and Greer and Irvin B. Tucker for defendant.*

CLARK, C. J. The prisoners, Robert Grainger and Missie Marlow, were convicted of murder in the second degree. The evidence for the State showed that they were living together,

without being married; that on the morning of 28 April, 1911, in company with one Tyson, they went to Cerro Gordo, where Grainger got an express package out of the depot containing whiskey. Grainger had a gun and before he got back into the buggy Missie Marlow said to him: "You had better get a box of shells; you will have need of them this evening." Grainger bought the shells, and they started to Grist's, 4 miles away. On the way, the parties took some fifteen or twenty drinks of the whiskey, to which they had added some water, and the witness said they were "neither drunk nor sober" when they got to Grist's. On the way, Grainger was constantly firing his gun and Missie Marlow reloading the gun every time he fired it. On the road Grainger and Missie Marlow talked about Bud Nobles, the deceased. Grainger said: "Ain't you got an old sport at Grist's?" She denied it, and Grainger said with an oath that she knew she had; that it was Bud Nobles, and that he "would 'tend to him this evening." He made the same threat to her three or four times, that he "would 'tend to Nobles" that evening.

When they got to Grist's, Grainger shot and scared some little children, who ran into a ditch about 200 yards from the postoffice. Then Grainger said: "Let's drink some whiskey." As the parties passed Smith's store, Bud Nobles was standing between the store and the old postoffice. Missie Marlow said to Grainger, "Yonder is the man you want," and Grainger said: "How do you know it is?" Missie said: "I know him by the suit of clothes, and I want you to shoot his d——d head off," and Grainger said: "I will do anything you say do." This was about half an hour before he shot Nobles. Grainger fired the gun twice at the house of Mr. Struthers. They then went on down the road about 300 yards and Grainger said, "Let's stop and take a drink," and they all did so. They then drove up to a negro house and shot a time or two, and, after some profanity and rowdiness, Grainger jumped out of the buggy with his gun in his hand and his knucks on the other and took after the darkey, whom he overtook and struck two or three times. Missie Marlow overtook him, and they went up the road together and saw Bud Nobles standing in the yard of Wiley Hammond. Grainger then opened his gun and said: "Bring

me some shells." Missie Marlow said: "Run here, Robert; I
have got the shells." They ran towards each other and Grainger
got the shells from her. Nobles went on off up the street, when
Grainger ran across and cut him off. Nobles' hands went up,
palms out, and Grainger shot Nobles and the latter fell. He
was unarmed. Grainger was four feet from Nobles when he
shot him. Nobles died from the wound. There was other evi-
dence of Grainger "shooting up" the town, Missie Marlow being
with him.

The above was in substance the evidence for the State, some-
what condensed. The evidence offered by the defendant tended
to show that there was a fight between the two men, and that
the prisoner Grainger was cut with a knife. McCumbie, witness
for the State, testified that he arrested Robert Grainger and
Missie Marlow about 2 o'clock that night; that he saw his under-
shirt, and it was cut in several places; that there was a scar on
his arm and two or three cuts in his back, but the cuts were not
bleeding, and Grainger said that he had been cut in the arm the
day before at Tyson's in trying to part some men in a row. He
did not allude to the cuts on his back.

The first eleven exceptions are to the allowance of the evidence
as to the prisoner "tanking up" on whiskey, his threats to Missie
Marlow in regard to Nobles, and the conversation between them,
and as to her identifying Nobles and telling Grainger to shoot
his head off, and his saying that he would do so, and the evidence
generally in regard to Grainger's "shooting up" the town. All
this testimony was competent on the charge of murder in the
first degree, to show premeditation. The jury were lenient in
not taking that view of it, but in letting the parties off with a
conviction of murder in the second degree.

It is true, the prisoner testified that there had been a fight
between him and the deceased, and on the trial the prisoner was
stripped in the presence of the jury and showed the cuts in his
shirt and in his body. But the jury, in spite of the able defense
of his counsel and the impassioned appeals to their sympathies,
did not accept this version, but found that the prisoners were
guilty of murder in the second degree. There is also further
evidence for the State that the wounds on the prisoner's body

were not fresh the night after the homicide. The jury rejected entirely the prisoner's allegation of self-defense.

The prisoner also relies upon an exception that the judge refused to give the following prayer for instruction: "The court instructs the jury that the prisoners are not on trial for selling whiskey nor for making an assault upon Henry Johnson with a pair of knucks, and as independent facts should not be considered by the jury in arriving at a verdict in this case." The prisoner Grainger contended that "at the time he fired the shots, three persons were assaulting him with knives; that he was not in the wrong; that he attempted to get them to stop; that they cut him in the back and knocked him down, and he fired." The court told the jury that if this was so, Grainger was not guilty of any offense, and it would be their duty to return a verdict of not guilty. The jury by their verdict utterly rejected the version of the affair contended for by the prisoners. Having rejected the prisoner's plea of self-defense, then under the law the jury would be compelled to return a verdict of murder in the second degree unless the defendant had offered evidence tending to reduce the crime to manslaughter, and there was nothing in the evidence referred to in the above special instructions which tended to reduce or increase the grade of the crime committed. *S. v. Quick,* 150 N. C., 820. The charge of the court clearly stated for what offense the prisoners were tried, and restricted the trial to that. This was a substantial compliance with the prayer.

The prisoners refrained from arguing in their brief the 18th exception, for refusal to give another prayer for instruction, though they do not expressly abandon it. That prayer could not have been given by the court, for it left out of consideration the presumption of murder in the second degree which arises from the killing with a deadly weapon.

Nor was it error to refuse the prayer for instruction that it was incumbent upon the State to show motive on the part of Missie Marlow for desiring that death or bodily injury be inflicted on the deceased, Bud Nobles. The law does not require that "If such motive existed, it is the duty of the State to show the same to the jury." While the case may be strengthened by

showing motive, when the evidence is circumstantial, yet the State is never required to show such motive. *S. v. Adams,* 136 N. C., 620; *S. v. Turner,* 143 N. C., 642; *S. v. Stratford,* 149 N. C., 483.

Nor can we sustain exception 23, which is that the court recited the contentions of the State in summing up the contentions of both parties to the jury. In *Walker v. Walker,* 151 N. C., 167, *Mr. Justice Manning* said: "His Honor was in this particular stating the contentions of the defendant, and there was evidence offered on the trial supporting this contention. It has been frequently held by this Court that it is the duty of the trial judge to call to the attention of the jury those contentions of the parties which are supported by the evidence."

The prisoners were defended by able, eloquent, and zealous counsel. The case was tried by a very careful and able judge. The prisoners both testified in their own behalf. The jury after weighing carefully and impartially all the evidence on both sides have arrived at what may well be deemed a most merciful verdict. They might well have found upon this evidence the prisoners guilty of murder in the first degree.

In carefully considering the exceptions, we find no error committed which was prejudicial to the prisoners.

No error.

BROWN, J., dissenting: Since I have been a member of this Court I have never voted for a new trial in a criminal case unless I saw that some substantial and harmful error had been committed on the trial. I think that is the case here.

The court permitted the State to introduce evidence tending to prove that some time prior to defendant Grainger meeting with Nobles, the deceased, said defendant shot at Struthers' house; that he came back up Hammond Street and met up with some negroes, and hit one of them; that he threatened to shoot one Hinson; that he shot at some colored children; that he made an assault on Henry Johnson with his gun and struck him with knucks, and that he was attempting to sell whiskey.

All this evidence it appears to me to be utterly incompetent and well calculated to seriously prejudice the defendants before the jury.

The plea of the defendant Grainger is self-defense, and his main reliance was his own testimony, and bringing all these extraneous and incompetent matters into the case undoubtedly greatly injured him. *S. v. Jones,* 93 N. C., 611; *S. v. Barfield,* 29 N. C., 299-308; 21 Cyc., p. 896; *S. v. Whitaker,* 79 Ga., 87.

The prisoners asked the following instruction, which was refused, and they excepted: "The court instructs the jury that the prisoners are not on trial for selling whiskey, nor for making an assault upon Henry Johnson with a pair of brass knucks, and, as independent facts, should not be considered by the jury in arriving at a verdict in this case."

The Attorney-General, with his usual candor, says in his brief that in his opinion the court should have given that prayer, and admits that the evidence referred to in the instruction was not competent.

It is urged, however, that, inasmuch as the jury rejected the defendant's plea of self-defense, the error was harmless, as defendant would be guilty of murder in second degree, the crime for which they stand convicted. It may be that the admission of all that incompetent evidence so prejudiced their minds that the jury rejected his plea and evidence entirely.

This was a proper and pertinent instruction, and had it been given it would have neutralized the effect of the incompetent evidence.