## Richard Hardin v. The State.

### No. 264.　Decided December 8, 1909.

**1.—Murder—Evidence—Res Gestae—Declaration of Third Parties.**

Upon trial for murder, resulting in a conviction of aggravated assault, there was no error to permit a State's witness to testify that, after the stabbing, when witness approached the body of the deceased, appellant having stepped off to one side, witness asked who had done the killing, and a bystander, who had already testified that defendant did it, answered that defendant killed deceased; nor was there any error to admit the declaration of this witness in this connection, that he told defendant that he had already killed deceased, and that he was not going to let him do anything else to him, in response to a declaration of the defendant that he would kill deceased, and telling parties to turn him loose.

**2.—Same—Evidence—Statement of Facts—Testimony of Absent Witness.**

Upon trial for murder, where it had not been shown that an absent witness was out of the State, etc., his testimony on a previous trial could not be reproduced; besides, reading such testimony from an agreed statement of facts of a former trial was inadmissible.

**3.—Same—Evidence—Impeaching Testimony.**

Upon trial for murder, testimony of defendant's witness, on cross-examination by the State, after said witness had testified that deceased knocked witness down, to the effect that he had been convicted of assaulting deceased by kicking him, when he had not done so, was inadmissible as impeaching testimony or for any other purpose.

**4.—Same—Evidence—Impeaching Witness.**

Where, upon trial for murder, the State contended that the defendant did the killing, and the defendant contended that his brother did it, testimony that said brother had been indicted by the grand jury for simple assault, growing out of said transaction, and tried and convicted thereon in the Justice Court, was inadmissible.

**5.—Same—Argument of Counsel.**

Where, upon trial for murder, objection was made to argument of State's counsel with reference to defendant's brother, claiming that he did the killing, etc., which was outside of the record, the court should have charged the jury to disregard such argument as requested.

**6.—Same—Impeaching Witness—Defendant's Right to Counteract.**

Upon trial for murder, the State having attacked defendant's witness by showing statements made out of court contradictory to what he testified, it was clearly permissible for defendant to introduce evidence to the effect that his witness made similar statements shortly afterward, which were in consonance with his testimony on the trial.

**7.—Same—Charge of Court—Self-Defense—Defense of Another.**

Where, upon trial for murder, the evidence showed that the deceased had made an assault upon a friend of defendant, and also upon a brother of defendant, and that deceased had also made a demonstration towards the defendant as if to attack him, the court should have submitted the issue of self-defense as well as defense of another.

**8.—Same—Charge of Court—Intent to Injure—Presumption.**

Where, upon trial for murder, the evidence raised the issue of self-defense and defense of another, it was error on the court's part to submit the law with reference to simple assault, to the effect that where an injury was inflicted the intent to injure was presumed, and that defendant must show accident or innocent intention.

**9.—Same—Charge of Court—Moral Turpitude—Credibility of Witness.**

Upon trial for murder, where the testimony of the State against two of defendant's witnesses consisted of indictments against them charging simple assault, and the mother of defendant had given material testimony in his behalf, was not indicted for any offense and not connected with the matter, the court erred in charging the jury that these indictments were not introduced to show incriminating facts, but were only admitted in evidence so the jury could pass upon the credibility of these witnesses.

**10.—Same—Charge of Court—Alibi.**

Where, upon trial for murder, the issue was not as to defendant's absence, but, being nearby the scene of the homicide, whether he did the killing, a charge on alibi should not have been submitted. Following Jackson v. State, 55 Texas Crim. Rep., 79.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of aggravated assault; penalty, a fine of $100.

The following statement from appellant's brief is substantially correct: The homicide occurred in the town of Itasca in a street running north and south, and in front of a barber shop occupied by Will Sears. The evidence shows that the appellant and all the parties present at the time of the homicide were negroes, and that the killing occurred between midnight and one in the morning. State's witnesses testified that there were about seventy-five or one hundred

people present, and that the killing occurred very suddenly, and that the whole time from the beginning of the difficulty until the mortal stab was inflicted covered but a minute or two, or perhaps less time.

Appellant was a boy only about 19 years of age at the time of the homicide. He lived on a farm three or four miles northwest of Itasca and was engaged in farm labor. His mother and his brothers, Walter Hardin and Dave Hardin, lived in the same neighborhood and were engaged in the same kind of work. Maje Wright, another negro boy, lived in the same community and was a friend of appellant, and he and Walter Hardin were present at the time of the killing.

The deceased was a large negro weighing about 180 pounds. He lived three or four miles east of Itasca on the farm of one Tom Clayton. On the evening of the homicide, the deceased took out of the express office in Itasca a gallon of whisky, and the evidence shows that he was drinking liquor late in the evening on the night of the killing.

It was not claimed that the appellant had any ill-will or grudge against the deceased prior to the homicide. In fact they were not even acquainted with each other, but lived seven or eight miles apart and in opposite directions from Itasca.

On the night of the homicide, the appellant accompanied one of the Johnson girls to Itasca. Walter Hardin and Maje Wright had also gone there. The killing happened in a street running north and south and in front of the barber shop. Will Johnson was picking a guitar while another negro was dancing on the front gallery of the shop. There was a light in the shop, but no window in the east end of it next to the street. The crowd of negroes composed of men, women and children had increased in numbers, until there were seventy-five or one hundred standing around in the street and around the gallery and shop, listening to the music and looking at the dancing.

The State contended upon the trial of this cause that the appellant stabbed and killed deceased. The appellant asserted and introduced evidence to show that Walter Hardin stabbed and killed deceased. And Walter Hardin, as a witness, upon the stand, admitted and swore that he did kill the deceased.

*Ivy, Hill & Greenwood,* for appellant.—Upon question of evidence with reference to indictments charging defendant's brother and another with simple assault, and that the grand jury did not indict him for murder, as incriminating evidence against the defendant, etc.: Cecil v. State, 44 Texas Crim. Rep., 450; Underwood v. State, 39 Texas Crim. Rep., 409; Bennett v. State, 39 Texas Crim. Rep., 639; Patrick v. State, 45 Texas Crim. Rep., 587; Tillery v. State, 24 Texas Crim. App., 251. On question of introducing evidence to

show that defendant's witness had made similar statements to his testimony on trial which was attacked by State's witnesses: Sec. 1119, subdiv. 4, White's C. C. P. Upon question of court's charge submitting law that intent to injure was presumed: cases cited in opinion. On other questions in the case: authorities as cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The former appeal of this case is reported in 51 Texas Crim. Rep., 559. A review of some of the questions is also to be found in the case of Walter Hardin v. State, 55 Texas Crim. Rep., 631.

Without making a statement of the facts developed upon the trial, it may be sufficient to state that there was a sharply contested issue as to whether Walter Hardin or his brother, appellant, inflicted the fatal wound by stabbing with a knife and thereby killing Prince Monroe. The State's theory was that appellant did the killing. The defense's theory was that Walter Hardin did the killing. This conviction was for aggravated assault, imposing a fine as well as imprisonment in the county jail.

1. Bill of exceptions No. 1 shows that the State's witness Shaw, among other things, testified that appellant stabbed deceased, and in this connection the State further proved by this witness that appellant, after the stabbing, went off to one side, and that Will Sears came and stood by the body of deceased, and asked the question, "Who killed him?" The State was permitted to introduce the reply of Shaw to the effect that "Rich Hardin killed him." It was further shown in the bill that Shaw had already testified and given his version of the transaction, and subsequently the State was permitted to prove the conversation above stated. Appellant objected to this for several reasons, that it was hearsay, not binding upon appellant, and it was not shown that he heard the statement or was called upon, under the circumstances, to make any response; that it was illegal, incompetent and prejudicial. Following this, bill of exceptions No. 2 shows that the State having introduced evidence to the effect that appellant killed deceased, that appellant introduced evidence to the effect that Walter Hardin did the killing. Will Sears being upon the stand, the State proved he was working in a barbershop at the time of the homicide, and while so at work he heard someone say, "They are fighting out of doors." That he then went to the door, looked out, but saw no trouble, and returned resuming his work. Shortly after this he went out of the shop into the street and saw deceased lying on the ground dying. He saw no part of the difficulty, and did not see the killing. That he saw a man standing off some distance, and that he thought it was appellant; that some girls

were holding him, and he was trying to get loose, and said, "Turn
me lose, I will kill the dam ———," and the witness said to him,
"No you won't, you have already killed him, and you are not going to
do nothing else to him while I am here." The party referred to was
about twenty-five feet away from witness at the time. Various ob-
jections were urged to this practically the same as set forth in bill
No. 1, and in addition that it involved an opinion of the witness or
the interpretation of what had transpired, which would be purely
an opinion and speculation on the part of the witness, the witness
already having testified that he did not know who did the killing.
These two bills are considered together, because practically the same
question is involved. The testimony, under all the circumstances,
we think, was admissible.

2. Bill of exceptions No. 3 shows that the State was permitted
to introduce the testimony of Cleavis Wheeler, delivered upon a
former trial of the case, and the manner of reproducing it was by
reading the statement of facts as agreed upon as having occurred
upon said former trial. The statement of facts shows that the
witness Wheeler had testified that about a week after the homicide
he found a knife by the side of the road, about a mile west of
Itasca. That he opened the knife, looked at it and it looked like it
had rust on it; that he did not pay much attention to it, but took it
to be rust. That he afterwards took the knife to Mrs. Dunn's house,
and then concluded it was blood on the knife. That he heard at
Mrs. Dunn's that a negro had been killed. In this connection the
State proved the father of said Cleavis Wheeler and his family
shipped their goods to some point in Mississippi, and bought tickets
there, and the father said they were going to Mississippi, Cleavis
himself being a young boy. Without reproducing more of the bill,
it is sufficient to state it shows that a proper predicate had not been
laid for the introduction of this testimony by showing that young
Wheeler was out of the State at the time, and further objections seem
to be well taken that this character of testimony could not be repro-
duced by merely reading from an agreed statement of facts of a
former trial. Under such circumstances when reproduction of tes-
timony is permissible, a witness, who heard the former evidence,
if it is oral testimony, should be introduced to show what the witness'
evidence was on the former trial.

3. Bill of exceptions No. 5 shows that Maje Wright testified that
on the day of the homicide, when he first saw deceased he was stand-
ing in the barber shop door, and deceased came out and pushed
against him, and after some words deceased knocked witness down.
The State, on cross-examination, elicited from the witness that he
did not kick deceased, and was then permitted to prove that he had
been convicted in the Justice Court at Itasca for kicking deceased
on said occasion. Various objections were urged to the introduction

of this testimony. It was inadmissible. It was one of those misdemeanors, a conviction of which did not authorize its introduction as impeaching testimony. Of course, it could not be introduced to show by such conviction the fact he did the killing, it being but the opinion of the jury on the facts.

4. Bills Nos. 6, 9, 14 and 15 all refer to the same question. These bills were reserved to the ruling of the court permitting the State to prove that Walter Hardin had been indicted by the grand jury and tried in the Justice Court for simple assault. Various objections were urged to the admission of this evidence. The introduction of this evidence was clearly inadmissible. As has been stated, it was seriously contended by the State that appellant stabbed deceased. The evidence was cogent to the effect that Walter Hardin stabbed deceased and appellant did not. The grand jury indicted Walter Hardin for simple assault, and he was tried in the Justice Court at Itasca under this indictment. There was other evidence reserved in these bills showing that he had been tried in said Justice Court for simple assault under this indictment. It is not necessary to repeat the different forms in which this testimony was introduced. All of this testimony was erroneously admitted. The conclusion of the grand jury and the result of the trial of Walter Hardin, or the fact that the trial was had under the indictment found by the grand jury, and conviction obtained in the Justice Court could not be used as evidence against appellant. It was but the opinion of the grand jury in finding the indictment, and their conclusion as to the facts after investigating it with the witnesses before them. So upon another trial all this character of testimony will be excluded.

Bill of exceptions No. 15, referred to, was on the argument of the district attorney in connection with this character of testimony, in which he stated that "Walter Hardin never proclaimed from the house tops that he killed deceased till he got on the witness stand after defendant was indicted." Not only was an exception reserved to this statement of the prosecuting attorney, but a special charge was asked instructing the jury to disregard it, which was refused by the court. The charge should have been given. This matter, however, will not occur upon another trial.

5. Bills of exception Nos. 10 and 11 show that while Walter Hardin was testifying, the State asked him if he did not tell the State's witnesses Long and Martin on the night of the homicide, that he did not know anything about the killing, and that he had left before the homicide happened. These statements the witness denied. Long and Martin were then placed on the stand, and they testified that he did make these statements. Now, when this occurred appellant placed Carr on the stand and offered to prove by him that about a week after the homicide Walter Hardin told him that he stabbed and killed deceased; and offered to prove the same fact

by Malinda Hardin, the mother of said witness, all of which was excluded on objection of the State; and in this connection the prosecuting attorney's speech was made to the effect that Walter Hardin never proclaimed from the house tops that he killed deceased until he got on the witness stand after defendant was indicted. The State having attacked the witness by showing statements made out of court contradictory to what he testified, it was clearly permissible for appellant to introduce evidence to the effect that witness made similar statements shortly afterwards which were in consonance with his testimony on the trial. The State having undertaken to impeach the witness, and evidence was permitted to go to the jury to that effect, appellant clearly had a right to sustain himself by same character of evidence or by statements in effect as those drawn out by the State.

6. Exception was reserved to the charge because it failed to submit the issue of self-defense. The evidence shows that deceased had made an assault on Maje Wright, a friend of appellant, and also an assault upon Walter Hardin, the brother of appellant. The issue was presented by the evidence that appellant, if he killed at all, killed on account of the assault upon his brother. That among other things, it is shown that after deceased assaulted and knocked Walter Hardin down, and kicked Maje Wright, and cursed and abused them, that with his hand on his hip pocket he started directly towards appellant, and there is some evidence to the effect that it was under these circumstances that appellant stabbed deceased. We are of opinion this raised the issue of self-defense of himself as well as in the defense of his brother, and the issue should have been submitted to the jury. The court gave the following charge, to which exception was reserved: "If you should believe from the evidence beyond a reasonable doubt that the defendant inflicted injury upon the deceased then and in such case an intent to injure would be presumed and it rests with the defendant to show accident or innocent intention." Under the facts this charge should not have been given. While under the law of simple assault the statute provides that where an injury has been inflicted or violence given by the accused the intent to injure is presumed and it rests with the accused party to show accident or innocent intention, but in a case of this character this law is not applicable. See Richardson v. State, 32 Texas Crim. Rep., 524; Jones v. State, 13 Texas Crim. App., 1; Black v. State, 18 Texas Crim. App., 124; Schroeder v. State, 18 Texas Ct. Rep., 720.

7. The 14th paragraph of the court's charge is as follows: "You are instructed that the evidence with respect to the grand jury having found an indictment for murder against the defendant, indictments for minor offenses against Walter Hardin and Maje Wright can not be considered by you at all as an incriminating fact or circumstance against the defendant, but the evidence of the fact that

the grand jury had indicted Walter Hardin and Maje Wright was only admitted to enable you to pass upon the credibility of the witnesses Walter Hardin and Maje Wright and Malinda Hardin, and must not be used or considered by you for any other purpose, and as to whether the said testimony thus developed affects or tends to affect the credibility of any of them as witnesses is a question altogether for your determination." Exception was reserved to this charge. These exceptions were well taken. The charges against Maje Wright and Walter Hardin were misdemeanors, only simple assaults, and did not involve the idea of moral or legal turpitude, and could not be used as impeaching testimony. Just why Malinda Hardin's name was mentioned in the instructions we fail to understand. She was the mother of Walter Hardin and appellant, and in no way connected with the matter. She was not indicted. She was a material witness for appellant on the trial, therefore, this instruction was prejudicial. It certainly was not authorized as to her from any standpoint, nor was it authorized as to the other two witnesses.

8. A charge on alibi was given. Exception was reserved to this. At the time, if Walter Hardin did the killing, the evidence shows that appellant was nearby, only a few feet away. The issue was not as to his absence, but it was only as to the fact that he did not do the killing, but that Walter Hardin did it. Alibi is not his defense, nor did appellant show his absence further than as stated. Upon another trial we are of opinion this charge should not be given. Jackson v. State, 55 Texas Crim. Rep., 79, 115 S. W. Rep., 262.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*