CLARK, C. J., concurring.
Defendant was convicted of manslaughter, sentenced to three years imprisonment and appealed.
On Sunday afternoon, 22 October 1916, the defendant had gone to the home of Isaac Clark for a visit, and later went to the home of Mrs. Lucy Clark near-by. At about dark the deceased Lewis Shew and two brothers and a man named Porter came down the road in the direction of Mrs. Clark's "hollering and cursing." Mrs. Clark went out and asked them to go away; defendant and Julius Clark then went out to where the boys were. Defendant gave the Shew boys some liquor, and Porter complained that he had been slighted. Defendant then started toward Porter with the bottle, whereupon Porter knocked him down, jumped on him and beat him. Defendant then went back to the home of Mrs. Clark and said to her son, "Julius, give me my gun; those boys have not treated me right." He then went back to the scene of the fight. One witness stated: "Just after defendant left *Page 769 
the house I saw a pistol in his hand. He went back up the road towards the granary or lumber house I spoke about awhile ago; he passed by me, went up there and met up with the other boys, and the pistol fired. I can't say which one of the boys was closest; I don't know who it was; I don't know whether I heard Davis or Shew say anything before the pistol fired or not. The pistol fired three or four times, I could not say which. Clarence Davis fired the pistol. He was three or four steps, or about that distance, from either one of these boys when the pistol fired. After the pistol fired I saw one of them kind of go down. At that time I heard some cursing, and heard some one say, "God damn him, he has killed my brother and I am going to let him lay down by the side of him and die too!"
There was evidence of medical experts that the death was caused by a gun-shot wound in the right breast, going through the lung and the right cavity of the heart, and that the wound might have been caused by a long sharp, round instrument, but there was no evidence that such an instrument had been used.
Simon Peyton Shew, brother of deceased, testified that with his brothers and Porter he was coming toward Mrs. Clark's house when the defendant and Julius Clark came up to them in the road. Defendant offered them some liquor, and Porter complained because he had not been offered any; then he knocked defendant down and got on top of him. After they were parted, defendant went to Mrs. Clark's house and returned with a pistol and shot deceased. The witness then stated: "I caught the gun and it fired out through the field; the next time I caught it and jerked it out of his hand and hit him with it. . . . After I hit Clarence Davis a lick or so I went and looked at (726) Lewis, and he drew up a little bit. I saw he was dead and went back and hit Clarence Davis several times."
There was much conflicting evidence as to details, but none as to the fact of the homicide, and all showed that it resulted from a drunken brawl in which all the participants were more or less intoxicated.
after stating the case: The defendant contended that he did not kill the deceased, but that he was shot by someone else, present at the time of the killing and who had a pistol of smaller calibre than the one he carried, and offered evidence, including medical testimony, as to the nature and extent of the wound, to prove his contention. During the trial he entered numerous exceptions to the rulings *Page 770 
of the court, as many as sixty-three in all, but has abandoned twenty-eight of them; and of those that are left there are several which are pointed to the same question, and we will, therefore, consider them in groups. There are some of them so plainly irrelevant or immaterial as not to require separate discussion, and others taken to rulings which, if erroneous, were manifestly harmless, though we do not mean to imply that they were erroneous.
We will consider and discuss those which are vital or substantial, and make only brief reference to some others which could not have affected the result even if there had been error.
1. Whether the defendant was cursing or not before the altercation took place was immaterial. It was contended by the State that he was, and the evidence offered could throw no light upon the question whether — after he had gone to the house and got his pistol, and then returned to the place of the homicide — he fired his pistol and killed the deceased. There was no evidence that he had cursed up to the time when he was knocked down by Porter, who thought that he had been slighted when a bottle was being passed around. There was nothing to show that, until he was so assaulted, the defendant had acted otherwise than as a peaceable man. His guilt turned upon what he did from that time until the deceased was shot and killed.
2. The exclusion by the court of the question as to what a witness for the State had said during an examination of him and other State witnesses by defendant's counsel, with the permission of the court, is not reversible error, because it does not appear how the witness would have answered it, or that his answer would have been favorable (727) to defendant; but, on the contrary, there is strong presumption that he would have answered it unfavorably, and counsel admitted that if he did so they would not offer evidence to contradict him. It would not be fair to the State or to the witness, if we should permit him to be thus discredited by the mere form in which the question is asked, without some assurance that he will admit the contradiction, or conflict, between his present testimony and his former statement. But it sufficies [suffices] to say that we are not informed as to what his answer would be. Under he circumstances, and with the admissions stated in the record, the defendant could hardly have expected him to say that he had contradicted himself, or, what is more, that he was prejudiced by the ruling. Jenkins v. Long, 170 N.C. 269, seems to be directly applicable, and shows that there was no reversible error because no prejudice, and there are other cases to the same effect. Hollifield v.Telephone Co., 172 N.C. 714; Rawls v. R. R., ibid., 211; McMillan v.R. R., ibid., 853. This covers the five exceptions relating to this question. *Page 771 
3. The questions as to the character for violence of Lewis Shew, the deceased, and Ernest Porter, were incompetent, because the evidence was not circumstantial, nor was there any showing that the defendant fired the pistol in self-defense. S. v. Turpin, 77 N.C. 473; S. v. Exum,138 N.C. 599; S. v. Banner, 149 N.C. 519; S. v. Blackwell, 162 N.C. 680.
It was said in S. v. Banner, supra: "The exceptions to the rule that the character of the deceased cannot be put in evidence are: (1) When there is evidence tending to prove that the homicide was committed in self-defense; (2) when the evidence is wholly circumstantial and the character of the transaction is in doubt," citing S. v. Turpin, supra; S. v. Byrd,121 N.C. 688; S. v. McIver, 125 N.C. 646.
As to whether the witness G. Miller, who remained in court after an order had been made excluding witnesses, should be permitted to testify as to what occurred at the coroner's inquest, was a matter within the sound discretion of the court, the exercise of which is not reviewable here. We so held at the last term of this Court in Lee v.Thornton, 174 N.C. 288, where the question is fully considered and many authorities cited. In that case the witness was excluded by the court while here the State was allowed to examine him. See, also, S. v.Hodges, 142 N.C. 676, and S. v. Lowry, 170 N.C. 730, where it is said, at page 734: "The prisoners also except because, after the court had made an order that no witness for the State or for the prisoners should be allowed in the courtroom during the trial, a witness for the State who remained in the courtroom was permitted to testify. The prisoners moved for a nonsuit on that ground, and also to set aside the verdict, and excepted to the denial of these motions. But it is a matter in the discretion of the court whether such witness (728) shall be examined or not. 12 Cyc. 547. The same point was made in S. v. Hodges, 142 N.C. 676, and it was held that this was a matter which rested in the discretion of the presiding judge. The same ruling was made in S. v. Sparrow, 7 N.C. 487, and Purnell v. Purnell, 89 N.C. 42, and is stated as settled law in the text-books. 1 Greenleaf Ev., secs. 431 and 432 and notes, and 2 Bishop New Criminal Proceedings (2 Ed.), secs. 1191 to 1193a."
It was contended by the defendant in Lee v. Thornton, supra, that the court could not exclude the witness and thereby deprive him of his constitutional right to have the witness heard by the jury, but in this case the court did what the defendant insisted in that case it was legally right to do. So that, in any view of the ruling, the court in this case was correct.
4. Exceptions as to the reference of the court in its charge to unconsciousness produced by voluntary drunkenness should be disallowed, *Page 772 
as this was said merely for the purpose of illustration, and to properly discriminate between unconsciousness caused by the prisoner's voluntary act, and that not so caused. The judge distinctly charged as to the mental condition which would excuse the act of killing, when he said: "It would be sufficient for him to show that he was in a state of unconsciousness or insanity caused by the blow inflicted upon him," but what the defendant did and said after he had received the blow was so thoroughly inconsistent with such a state of mind as to render this excuse for the homicidal act inadmissible. S. v. English, 164 N.C. at p. 512; S. v. Murphy,157 N.C. 614; S. v. Shelton, 164 N.C. 513. The defendant has had the full benefit of the contention that he was unconscious or not in such a state of mind that he could premeditate or deliberate or form any criminal intent, if that was material under the authorities just cited, as he was not tried for murder in the first degree, and was convicted only of manslaughter, where no specific intent is required to constitute the crime as in the higher felony of murder in the first degree. The doctrine is fully explained in S. v. Murphy, supra, and S. v. Shelton, supra.
5. There are many objections to the charge, but none of them, in our opinion, is sound. The court instructed the jury fully as to every phase of the case upon which there was evidence and explained the law fully and clearly. It is a familiar rule that when the State has shown that the defendant killed the deceased with a deadly weapon, the burden shifts to him, and he must satisfy the jury as to any matters of mitigation or excuse, or the jury should convict him of murder in the second degree, as the law in such a case implies the malice. The charge as to the several degrees of homicide and as to the burden of (729) proof was strictly in accordance with precedents. S. v. Brittain, 89 N.C. 481; S. v. Simons, 154 N.C. 197; S. v. Rowe, 155 N.C. 436;S. v. Yates, ibid., 450, and S. v. Heavener, 168 N.C. 156. Besides, the conviction was of manslaughter, and the question of malice is not involved in that crime. But, if the verdict had been one for murder in the second degree, we think the charge upon malice with reference to that degree of the homicide, was quite favorable to the accused, as the judge referred to his former instruction and finally placed the burden to show it upon the State. The defendant surely has no reason to complain.
There was really no element of self-defense. After the defendant went to the house and got his pistol and then returned to the field of combat, he assumed the character of an aggressor as the evidence shows. He could easily have avoided another conflict, and instead of acting in self-defense, the proof tends to show that his motive was one of revenge, or of satisfaction, for the supposed wrong inflicted upon *Page 773 
him, the question of cooling time not being presented, as in S. v. Merrick,171 N.C. 788. The case, therefore, was not within the rule stated as to the nature and extent of the right of self-defense in S. v. Barrett,132 N.C. 1005; S. v. Blackwell, 162 N.C. 672, at 683; S. v. Johnson,166 N.C. 392, at 395, cited by the learned counsel of the defendant.
The exceptions to the instructions as to the nature of the wound, whether inflicted by a pistol or long and sharp instrument, as bearing upon the question whether the defendant actually killed the deceased, cannot be sustained, as these matters were for the jury and were submitted to them under proper instructions. If the judge failed to state the contentions of the defendant properly, his attention should have been directed to the error at the time, so as to afford opportunity for correction. McMillan v.R. R., 172 N.C. 853. Even if there is technical error, courts will not reverse where it clearly appears that it is not substantial and could not have affected the result. Goins v. Indian Training School, 169 N.C. 737;Elliott v. Smith, 173 N.C. 265.
Some of the objections in this case are purely technical in character, and, while we do not think any error is made to appear, yet, if it had been, in the respect alleged, we are satisfied that no harm has resulted and that there is nothing to justify a belief that, except for the error, the verdict would have been different from what it is. Goins v. IndianTraining School, supra; Elliott v. Smith, supra; Schas v. Assurance Co.,170 N.C. 420. We have given full and careful consideration to the record and the argument of the learned counsel, and have found no reason for disturbing the judgment.
No error.