STATE v. FRANK KEEVER.

(Filed 3 January, 1919.)

**1. Homicide— Harmless Drinks— Vendor and Purchaser— Poison— Death— Presumptions—Evidence—Burden of Proof.**

Where there is evidence tending to show that the defendant sold an ordinarily harmless beverage, but drinking of which produced death, and it was afterwards found to contain 38 per cent of a deadly poison, a *prima facie* case is made out against him, whereupon he must show matters of exculpation; and where no felonious purpose to commit murder by poisoning, with malice aforethought, is indicated, it is sufficient to support a verdict of manslaughter.

**2. Appeal and Error—Assignments of Error—Instructions—Verdict—Harmless Error.**

Where the jury have rendered a verdict of manslaughter against the defendant on trial for homicide, errors assigned relating to the charge of the court as to murder in the second degree of murder are regarded as immaterial on appeal.

**3. Homicide—Intoxicating Liquors—Poison—Vendor and Purchaser—Criminal Intent—Manslaughter—Evidence.**

One who intentionally puts wood alcohol into a harmless beverage to produce intoxication, and sells the same, acts recklessly and in violation of the prohibition law, and though he has done so without knowledge of its poisonous quality, and death thereby results to others by drinking it, he is guilty of manslaughter.

INDICTMENT for murder, tried before Cline, J., at July Term, 1918, of CATAWBA.

The defendant was put on trial for murder in second degree and convicted of manslaughter and sentenced to penitentiary. From which judgment he appealed.

Attorney-General Manning, Assistant Attorney-General Nash, and A. A. Whitener for State.

W. C. Feinster and W. A. Self for defendant.

BROWN, J. The defendant was indicted in separate bills for the murder of Louis Smyre and Garland Bolick. By consent, the bills were consolidated and tried as one case.

The assignments of error are directed to the refusal to sustain motion to nonsuit and to the charge of the court. The facts of the case as disclosed by the evidence are substantially these: The defendant sold to the deceased, in February, 1918, two quarts of cream soda and one pint of ginger extract, contained in glass bottles, which had been left over from a bottling plant formerly conducted by one Thomas Carper, and which had been stored for several years in a barn of one Misenheimer after Carper closed up his business. This liquid was taken from the barn by the defendant to sell. Both the deceased drank the liquid and were taken violently ill and shortly thereafter died from the effects. Others who drank the liquid from the same bottles were taken sick, but recovered. The evidence tends strongly to prove that the liquid sold to the deceased by defendant contained at the time 38 per cent of methol, or wood alcohol, a very deadly poison. There is no evidence that wood alcohol was an ingredient in the cream soda. The bottles were unlabeled and there was nothing to indicate that the contents contained a violent poison.

The motion to nonsuit was properly overruled. When the State introduced evidence tending to prove that the defendant sold to the deceased

a beverage, 38 per cent of which was of a well-known deadly poison, and that deceased died from the effects, it made out a *prima facie* case. It is true the circumstances of the sale plainly indicated there was no felonious purpose to commit murder by poisoning with malice afore-thought, but defendant is not charged with that.

The State was not called upon to prove that defendant put the deadly poison in the otherwise harmless soda and ginger. That may be inferred by the jury from the circumstance that defendant was selling it. The burden is on the defendant to exculpate himself by satisfying the jury that he had no knowledge of the existence of the poison in the liquid. It is a known fact that cream soda and ginger in a normal state do not contain a deadly poison, and if the liquid he was dispensing contained it, as the undisputed evidence shows, it was incumbent on defendant to satisfy the jury that he did not put the poison in the liquid and did not know it was there when he sold it. This was a fact exclusively within his own knowledge.

The rule is thus stated in Foster's Crown Law, p. 255: "In every charge of murder, the fact of killing being first proved, all the circum-stances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner unless they arise out of the evidence produced against him, for the law presumeth the fact to have been founded in malice until the contrary appeareth; and very right it is that the law should so pre-sume. The defendant in this instance stands upon just the same ground that every other defendant doth; the matters tending to justify, excuse, or alleviate must appear in evidence before he can avail himself of them." *S. v. Arnold,* 35 N. C., 184; *S. v. Slagle,* 83 N. C., 630; Whar-ton on Crim. Ev., sec. 341; *Askew v. U. S.,* 165 U. S., 165.

There was no way by which the State could well prove directly that the defendant knew that there was wood alcohol in the liquid. There-fore, where it proved the actual killing by the poison supplied by de-fendant, he must show mitigation or excuse. A similar principle has been frequently recognized in this Court. A killing with a deadly weapon, admitted or proven, implies malice, and, nothing else appear-ing, the prisoner is guilty of murder in the second degree, and the burden rests upon him to show matters of mitigation or excuse. *S. v. Davis,* 175 N. C., 723, at 728.

The third assignment of error relates to the charge of the court as to murder in second degree, and as defendant was acquitted of that offense need not be considered. The other assignments relate to the charge upon manslaughter. The learned judge presented that view of the case to the jury in these aspects:

1. If they find that defendant intentionally put the wood alcohol in the extract, with the intent to make it intoxicating, without knowing it was a poison.

2. If they find that the defendant put the alcohol in the drink in such way as to manifest a reckless disregard of human life.

3. If they find that defendant was intending to make an intoxicating liquid to sell in violation of the laws of this State, and in doing so got into it wood alcohol, which poisoned and killed the ones imbibing it.

If the defendant put wood alcohol in the liquid to produce intoxication, without knowledge of its poisonous quality, and proceeded to sell such decoction, he was engaged in an unlawful as well as a reckless business, and if death ensued because of such poison he is guilty of manslaughter.

The sale of intoxicating liquor is now banned and condemned by the laws of the Nation and most of the States, including North Carolina. To sell it is not only *malum in see,* but *malum prohibitum.* When the defendant sold this liquid to the deceased he was engaged in an unlawful act, and if the deceased died in consequence of the poison put in it by defendant, although innocent of any purpose to kill, he is guilty of manslaughter.

The charge of his Honor is fully sustained by the evidence and is a very clear and fair presentation of every phase of the case.

No error.