STATE v. J. G. UPCHURCH.

(Filed 28 April, 1965.)

**1. Indictment and Warrant § 9;    Receiving Stolen Goods § 2—**

An indictment charging defendant with receiving, with knowledge they had been stolen, a specified number of cartons of cigarettes and cases of

beer and a case of sardines belonging to a named person, *held* sufficiently definite and not subject to arrest of judgment for failure to aver the brand names of the goods.

**2. Receiving Stolen Goods § 5—**

Evidence tending to show that certain goods were stolen and carried to defendant's place of business by the thieves and that the thieves sold the goods to defendant at about half of the wholesale price, and that defendant knew the goods had been stolen, *held* sufficient to take the issue of defendant's guilt to the jury.

**3. Criminal Law § 71—**

After officers had served a warrant upon defendant for receiving stolen goods, defendant voluntarily engaged in a conversation with the officers in respect to the merchandise he was charged with receiving, and in the course of the conversation made incriminating admissions, *held* there being evidence that the admissions were freely and voluntarily made without inducement by promises, threats or coercion, the admission of the admissions will not be held for error, notwithstanding defendant was not warned that anything he said might be used against him or that he had a right to employ counsel.

APPEAL by defendant from *McKinnon, J.,* 5 October 1964 Regular Criminal Session of WAKE.

Criminal prosecution on an indictment charging that on 3 August 1963 defendant, 30 cartons of cigarettes, 20 cases of beer, and one case of sardines of the value of $152, of the goods and chattels of James Keith, before then unlawfully, wilfully and feloniously stolen, taken and carried away, did unlawfully, wilfully and feloniously receive and have, the said defendant then and there well knowing said goods and chattels to have been unlawfully, wilfully and feloniously stolen, taken and carried away.

Plea: Not guilty. Verdict: Guilty as charged in the indictment.

From a judgment of imprisonment for 12 months, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Charles W. Barbee, Jr., for the State.*

*Yarborough, Blanchard & Tucker for defendant appellant.*

PER CURIAM. Defendant assigns as error the denial of his motion to arrest judgment. His contention is that the indictment is fatally defective, in that it does not allege the brand names of the cigarettes, beer, and sardines. The indictment alleges the ownership of the 30 cartons of cigarettes, the 20 cases of beer, and the one case of sardines stolen, and their value. This was a sufficient description to apprise defendant as to the property he was charged with having received, and no minute description of the cigarettes, beer, and sardines by brand names is re-

quired. The description of these goods in the indictment is sufficient to support the judgment and precise enough so that a judgment under the indictment could be used as a bar to any subsequent prosecution. If defendant desired a description of the brand names of these goods, he could have requested before trial a bill of particulars. *S. v. Kosky,* 191 Mo. 1, 90 S.W. 2d 454, and cases cited on this question; *S. v. Smith,* 250 Mo. 350, 157 S.W. 319; *Alvarez v. State,* 75 Fla. 286, 78 So. 272; Annot. 99 A.L.R. 2d 813, § 21 Food and Drink, § 22 Chemicals and Drugs, § 23 Tobacco and Tobacco Products; 4 Wharton's Criminal Law and Procedure, Anderson Ed., § 1782, particularly p. 599; 27 Am. Jur., Indictments and Informations, § 83. There is contrary authority as shown in the A.L.R. annotation in the sections here referred to. See also *S. v. Moore,* 129 N.C. 494, 39 S.E. 626, 55 L.R.A. 96, wherein it was held that an indictment which charged the defendant with receiving various types of goods, including "tobacco," was not defective for failing to state the quantity of the various articles, such as the number of boxes of tobacco. This assignment of error is overruled.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of the State's evidence: defendant offered no evidence. The State's evidence, considered in the light most favorable to it, *S. v. Corl,* 250 N.C. 252, 108 S.E. 2d 608, shows the following facts: In August 1963 James Keith operated Hillcrest Service Station, which was located just beyond the Falls of Neuse on old U. S. Highway #1 in Wake County. On either late Friday night, 2 August 1963, or early on Saturday morning, 3 August 1963, he closed his service station and went home. He returned to it about 8:30 or 9:00 a.m. on Saturday, 3 August 1963, and found that one of its doors had been broken open, or at least its padlock had been prized off, and that 30 cartons of cigarettes of different brands, 23 cases of beer of five different brands, and canned goods, all belonging to him and which were in his service station the night before, had been stolen, taken and carried away.

Russell Wayne Perry, a witness for the State, testified in substance, except when quoted, as follows: About 3:00 a.m. on 3 August 1963 he drove an automobile to James Keith's Hillcrest Service Station. Charles May and Zeb Perry were in the car with him. Upon arrival at the service station, May and Perry got out of the car and he remained in it. They had a crowbar and screwdriver, which they used to get through the garage door at the service station. They brought out of the service station 30 cartons of cigarettes, 23 cases of beer, a case of sardines, and other merchandise, some of which they put in the trunk of the car and some in the back seat. With all three of them in the car, he drove it toward Bunn in Franklin County, and arrived at defendant's home in

Franklin County about 4:30 in the morning. He knocked at defendant's door and told him they had some stuff for him. Defendant told them he would be at his store about 6 a.m., and for them to go there. They went to defendant's store about fifteen minutes of six and the defendant was there. Defendant asked him what he had, and he told him. He testified: "The defendant Upchurch asked if we got it from anywhere close by, and we told him no, not from anywhere close by." Defendant bought from them the 20 cartons of cigarettes at $1 a carton, and 20 cases of beer at $2.50 per case, property which they had stolen from James Keith's service station. He, May, and Perry kept three cases of beer for themselves. The case of sardines and the other merchandise they carried to an old house located between Wake Forest and Youngsville. The cartons of cigarettes they sold to defendant consisted of Winstons, Pall Malls, Camels, Luckies, Salems, and Viceroys, and the cases of beer they sold to defendant consisted of Schlitz, Budweiser, Blue Ribbon, and Pilot. After defendant paid them for the cartons of cigarettes and cases of beer, they unloaded them from the car and carried them into the back room of his store where the defendant wanted them put. Prior to this date he had had other dealings with the defendant. About 15 or 16 June 1963 they sold defendant 65 cartons of cigarettes, which they had stolen from C. N. Robertson's store on the road to Wendell, for $1 a carton. About 24 June 1963 he sold to defendant 65 or 70 cartons of cigarettes and two cases of coffee for about $80 or $85, which he, May, and one Beddingfield had stolen from Windsor Park Super Market in Raleigh. On that occasion he remained in the car and May and one Beddingfield broke in the super market with a crowbar and screwdriver. He, Perry and May divided the money they received from selling to him the stuff they had stolen from Hillcrest Service Station. Heretofore he has pleaded guilty to breaking and entering the Hillcrest Service Station and to the larceny of this property. The retail price of cigarettes is $2 a carton. The cases of beer they stole from Hillcrest Service Station consisted of Blue Ribbon, Schlitz, Budweiser, and High Life. Blue Ribbon beer sells for $3.95 a case retail, and Schlitz, Budweiser and High Life sell for $4.95 a case retail.

On 24 August 1963, L. S. Covert, a deputy sheriff of Wake County and a witness for the State, in company with deputy sheriff Beasley of Franklin County, Charles May, and deputy sheriff Watkins, went to defendant's place of business and served a warrant on defendant for receiving stolen goods. Covert was asked by the prosecuting officer for the State to state what conversation he had with the defendant. Defendant objected, his objection was overruled, and he excepted. Covert testified in substance: He talked with defendant along with other deputies in respect to the merchandise defendant received from Charles May, and

defendant stated that he had bought some cigarettes and had bought some beer from him at $2.50 a case for beer. Upchurch said that he knew that was less than the regular price of the beer. Defendant said he had a beer permit and had been selling beer for ten years. He asked defendant if he did not know that on each and every invoice for beer which he bought that he had to have the permit number on it, and he said that he did. He asked him did he get any invoice like that in this case, and he said no. He said, "Well, you knew this beer was stolen, didn't you?" And he said, "I guess I did." Defendant's motion to strike the answer of the witness was denied, and defendant excepted. The court properly denied defendant's motion for judgment of nonsuit.

Defendant assigns as error the admission in evidence, over his objection, of his conversation with L. S. Covert, a deputy sheriff of Wake County, at defendant's place of business in Franklin County, and the denial of his motion to strike it out. Defendant made no request of the judge for a preliminary inquiry as to the voluntariness of the statements he made; neither did he state to the court that he desired to offer any evidence in respect to them. When this conversation was had, a warrant had been read to defendant by an officer of Franklin County. A reading of the testimony of L. S. Covert, who was the only witness for the State other than James Keith and Russell Wayne Perry, who were not present at the time of the conversation, shows that defendant freely and voluntarily engaged in conversation with Covert, that no promises were made to him, and no threats made or any form of coercion applied. It is true defendant was not warned that anything he said might be used against him, and that he had a right to employ counsel. Defendant does not contend in his brief that any promises were made to him, or any threats or coercion used against him, when he engaged in conversation with Covert. Defendant relies upon *Escobedo v. Illinois,* 378 U.S. 478, 12 L Ed. 2d 977, which was decided by a five to four court on entirely different facts, and which we do not consider as applicable here to the free and voluntary conversation Covert and defendant had. These assignments of error are overruled.

Defendant's other assignments of error are formal. In the trial below we find

No error.