STATE v. PATRICIA McLAWHORN PHILLIPS.

(Filed 2 June, 1965.)

**1. Homicide § 13—**

Defendant's contention that the fatal shooting of deceased was purely an accident is not an affirmative defense but is a denial of guilt, and therefore places no burden upon defendant but leaves the burden upon the State to show beyond a reasonable doubt all the essential elements of the offense, including intent, and the presumptions arising from the use of a deadly weapon do not obtain unless and until the jury finds beyond a reasonable doubt that defendant intentionally shot deceased.

**2. Homicide § 23—**

Where defendant contends that the fatal shooting of deceased was purely accidental, an instruction to the effect that if the jury found beyond a reasonable doubt that defendant intentionally shot deceased with a deadly weapon defendant would be guilty of murder in the second degree unless defendant established to the satisfaction of ·the jury that the killing was the result of misadventure or accident, must be held for prejudicial error.

**3. Homicide § 31—**

Where defendant on appeal from a conviction of voluntary manslaughter contends that the fatal shooting of deceased was purely accidental and involved no negligence on her part, an instruction placing the burden upon defendant to exculpate herself upon the grounds of accident must be held for prejudicial error, even though the instruction related to the question of defendant's guilt of murder in the second degree, since the erroneous instruction upon the question of accidental killing was prejudicial upon the question of whether the killing was the result of culpable negligence or was purely accidental in the legal sense.

APPEAL by defendant from *Johnson, J.,* January 1965 Criminal Session of DURHAM.

Defendant was tried upon an indictment charging her with the first-degree murder of her husband, Harry E. Phillips. The State elected not to seek a conviction of the capital crime. The jury returned a verdict of guilty of voluntary manslaughter. From the prison sentence imposed, defendant appeals, assigning numerous errors.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

*Arthur Vann and Everett, Everett & Everett for defendant appellant.*

SHARP, J. About 9:00 p.m. on October 23, 1964, defendant killed her husband with one shot from a pistol as he sat in the driver's seat of an automobile parked in the driveway of their home. The deceased was drunk.

The State's evidence, ample to withstand defendant's motions for nonsuit, tends to show that defendant shot the deceased when he pushed her out of the automobile as she attempted to get in it. A deputy sheriff testified that when he arrived in response to a call defendant said to him, "I shot my husband and you can do what you please with me, I don't give a G -- d ---"; that she said he would not let her do what she wanted to do, so she shot him; that she said, "You can carry me to jail, do whatever you please." So far as the record discloses, defendant made this statement spontaneously without any questioning by

the officer. The next morning the sheriff visited her in jail. He testified as follows:

"The next morning I told her, I said, 'Mrs. Phillips, I want to ask you a few questions.' And I said, 'You know what you tell me I can use it against you.' And she said 'I understand that.' And she said, 'What do you want to know about it?' I said, 'What did happen last night at your house?' She said most of the day they were drinking, she had some, and said Phillips was drunk, and said she was going out on the Fayetteville Road something around 8:45 or 9:00 o'clock to see a man there on the Fayetteville Road. She said she went out to the car and Phillips was sitting in the car, the company's car, and when she started in Phillips threw his hands up and pushed her out and she said she shot him. That was all there was to it."

Defendant, without assigning any reason whatever, objected and excepted to the admission of the testimony of both the sheriff and the deputy sheriff. To be sure, this evidence was relevant, and no reason appears why it was not competent. The statements were freely and voluntarily made. Defendant was told that anything she said might be used against her. *State v. Upchurch, ante,* 343, 141 S.E. 2d 528; *State v. Egerton, ante,* 328, 141 S.E. 2d 515. Whether defendant was then represented by counsel the record does not disclose. The matter of counsel was not mentioned. It is implicit in this evidence, however, that defendant knew of her right to counsel. One of her character witnesses, an attorney of many years' experience, testified that he had represented her previously.

Defendant's evidence tends to show: She acquired the pistol for protection during the absence of her husband, a traveling salesman, from home. It had been registered with the Clerk of the Superior Court since December 30, 1953. Because of prowlers in the vicinity she never leaves the house after dark without the pistol. Her lot abuts upon a railroad track at the rear, and a number of large trees make the premises dark. On the night in question she put the pistol in her pocketbook when she left the house to go to her daughter's. Outside, she was surprised to find her husband in the car. She told him he had had too much to drink to drive and reached over to take the keys from the car. He shoved her backward, but she continued her efforts to get the keys. He jerked her violently, and she fell forward onto him. She did not hear the gun go off, but immediately observed him go limp. She straightway went into the house and said to her daughter, "Honey, there's been a terrible accident. Our daddy's been shot. Call an ambulance and the sheriff."

Defendant does not rely on self-defense. She contends that the shooting was entirely accidental. She testified: "I am not contending or saying that I shot Harry in self-defense. If I pulled that trigger I know nothing about it."

The trial judge charged the jury, *inter alia,* as follows:

"(W)hen the intentional killing of a human being with a deadly weapon is admitted, or is established by the evidence, the law then casts upon the defendant the burden of proving to the satisfaction of the jury, not by the greater weight of the evidence, nor beyond a reasonable doubt, but simply to the satisfaction of the jury, legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that *will excuse it altogether upon the ground of* self-defense, *accident or misadventure.*" (Except for the use of the word *intentional* in the first line, this portion of the charge is taken almost verbatim from the opinion in *State v. Benson,* 183 N.C. 795, 111 S.E. 869.)

\* \* \*

"Now, members of the jury, when you come to consider the guilt or innocence of the defendant on the charge of murder in the second degree, the Court instructs you that you must ask yourselves first these questions: First, did the deceased, Harry Phillips, die as a result of any wound received by him on the occasion in question? Second, did the defendant, Patricia McLawhorn Phillips, shoot and kill the deceased, Harry Phillips? Third, did she kill him intentionally and did she kill him with a deadly weapon? If the State has satisfied you from the evidence and beyond a reasonable doubt that each and every one of these questions should be answered 'Yes,' then it would be your duty to return a verdict of guilty of murder in the second degree, *unless the defendant has established to your satisfaction from the evidence offered by her, or from the evidence offered against her, the legal provocation* which would take from the crime the element of malice and reduce it to manslaughter or *which would excuse her altogether on the grounds of misadventure.* (Assignment 81)

"So, if the State has satisfied you from the evidence and beyond a reasonable doubt that on the night of October 23, 1964, the defendant intentionally shot and killed the deceased, Harry Phillips, that she killed him with a deadly weapon, then the defendant would be guilty of murder in the second degree, and it would be your duty to return that as your verdict if the State has so satisfied you beyond a reasonable doubt, *unless,* as I have heretofore said, *the defendant, Mrs. Phillips, has established to your satis-*

*faction the legal provocation* which will take from the crime the element of malice or *which would excuse her altogether upon the grounds of misadventure or accident."* (Assignment 82).

A defendant's assertion that a killing with a deadly weapon was accidental is in no sense an affirmative defense shifting the burden of proof to him to exculpate himself from a charge of murder. On the contrary, it is merely a denial that the defendant has committed the crime, and the burden remains on the State to prove an intentional killing, an essential element of the crime of murder, before any presumption arises against the defendant. (Of course, accident will be no defense to a homicide committed in the perpetration of or in the attempt to perpetrate a felony. G.S. 14-17.) To hold otherwise would impose conflicting burdens of proof on the same issue and create two irreconcilable rules pertaining to the same matter. The charge here, in effect, recognizes an intentional accident — an impossibility. In accident "the will observes a total neutrality, and does not co-operate with the deed; which therefore wants one main ingredient of a crime." 4 Blackstone, Commentaries 26 (12th Ed., Christian's, London, 1795). Manifestly, if the State has satisfied the jury beyond a reasonable doubt that the shooting was intentional, a defendant could not thereafter establish to the satisfaction of the jury that it was accidental. In addition to posing a practical and a logical impossibility, the charge robbed defendant of the presumption of innocence and the benefit of the requirement that the State prove each and every element of the offense. *State v. Dallas,* 253 N.C. 568, 117 S.E. 2d 415; *State v. Cephus,* 239 N.C. 521, 80 S.E. 2d 147.

" 'Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer. Where it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was not the result of negligence, the homicide will be excused on the score of the accident.' 26 Am. Jur., Homicide, § 220, p. 305. The negligence referred to in the foregoing rule of law has been declared by this Court to mean something more than actionable negligence in the law of torts. It imports wantonness, recklessness or other conduct, amounting to culpable negligence." *State v. Faust,* 254 N.C. 101, 112, 118 S.E. 2d 769, 776. (The Court used this language in *Faust* in holding that there was no evidence of an accidental killing; it was not speaking directly to the problem of whether accident is a matter in denial or in affirmative defense.)

"The plea of accidental homicide, if indeed it can be properly called a plea, is certainly not an affirmative defense, and therefore does not impose the burden of proof upon the defendant, because the State cannot ask for a conviction unless it proves that the killing was done with criminal intent." *State v. Ferguson,* 91 S.C. 235, 244, 74 S.E. 502, 505. "It is the duty of the State to allege and prove that the killing, though done with a deadly weapon, was intentional or willful. * * * (T)he claim that the killing was accidental goes to the very gist of the charge, and denies all criminal intent, and throws on the prosecution the burden of proving such intent beyond a reasonable doubt." *State v. Cross,* 42 W. Va. 253, 258, 24 S.E. 996, 997. *Accord, State v. Matheson,* 130 Iowa 440, 103 N.W. 137; *State v. Budge,* 126 Me. 223, 137 Atl. 244, 53 A.L.R. 241; *State v. Hazlett,* 16 N.D. 426, 113 N.W. 374; *State v. Lindsey,* 68 S.C. 276, 47 S.E. 389; *Hardin v. State,* 57 Tex. Crim. 401, 123 S.W. 613; 26 Am. Jur., Homicide §§ 106, 290 (1940); 40 C.J.S., Homicide § 196 (1944).

This Court clearly recognized these principles in *State v. Williams,* 235 N.C. 752, 71 S.E. 2d 138, a case in which the defendant, pleading accident, was convicted of second-degree murder. Speaking through Valentine, J., this Court said:

"An intent to inflict a wound which produces a homicide is an essential element of murder in the second degree. (Citations) Therefore, to convict a defendant of murder in the second degree, the State must prove that the defendant intentionally inflicted the wound which caused the death of the deceased.

"When it is made to appear that death was caused by a gunshot wound, testimony tending to show that the weapon was fired in a scuffle or by some other accidental means is competent to rebut an intentional shooting. *No burden rests on the defendant.* He merely offers his evidence to refute one of the essential elements of murder in the second degree. If upon a consideration of all the testimony, including the testimony of the defendant, the jury is not satisfied beyond a reasonable doubt that the defendant intentionally killed deceased, it should return a verdict of not guilty of murder in the second degree." *Id.* at 753, 71 S.E. 2d at 139. (Italics ours.)

The opinion in *State v. Williams, supra,* makes no reference to *State v. Haywood,* 61 N.C. 376, or to *State v. Keever,* 177 N.C. 114, 97 S.E. 727, two cases *contra,* which hold that the burden is on the defendant to prove accident. In *State v. Haywood, supra,* the defendant contended that he shot the deceased accidentally because the lock on the gun was out of order. Affirming a death sentence, the Court said, *per* Pearson,

C.J., "(T)he *onus* of proof (of accident) lay upon the prisoner, the killing by him having been proven." *Id.* at 378. In *State v. Keever, supra,* the defendant was charged with the murder of two persons who died from drinking wood alcohol contained in bottled cream soda the defendant had sold them. Brown, J., speaking for the Court, said, "If the liquid he (defendant) was dispensing contained it (wood alcohol), as the undisputed evidence tends to show, it was incumbent on defendant to satisfy the jury that he did not put poison in the liquid and did not know it was there when he sold it. This was a fact exclusively within his own knowledge." *Id.* at 116, 97 S.E. at 728. The opinion quotes with approval the following statement from Foster's Crown Law:

> "In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity are to be satisfactorily proved by the prisoner unless they arise out of the evidence produced against him, for the law presumeth the fact to have been founded in malice until the contrary appeareth; and very right it is that the law should so presume."

Citing *State v. Davis,* 175 N.C. 723, 95 S.E. 48, Brown, J., reasoned that the principle of law governing a killing by poison was similar to that relating to a killing with a deadly weapon. In *Davis,* Walker, J., had written:

> "It is a familiar rule that when the State has shown that the defendant killed the deceased with a deadly weapon the burden shifts to him, and he must satisfy the jury as to any matters of mitigation or excuse, or the jury should convict him of murder in the second degree, as the law in such a case implies the malice." *Id.* at 728, 95 S.E. at 50.

Similar statements omitting the requirements that the State prove, or that the defendant admit, an *intentional* killing before any presumptions arise against him are to be found in our earlier reports. *E.g., State v. Robinson,* 188 N.C. 784, 125 S.E. 617; *State v. Benson,* 183 N.C. 795, 111 S.E. 869; *State v. Rowe,* 155 N.C. 436, 71 S.E. 332; *State v. Cox,* 153 N.C. 638, 69 S.E. 419; *State v. Fowler,* 151 N.C. 731, 66 S.E. 567; *State v. Worley,* 141 N.C. 764, 53 S.E. 128; *State v. Clark,* 134 N.C. 698, 47 S.E. 36; *State v. Willis,* 63 N.C. 26; *State v. Haywood, supra.*

Intervening, however, among the above decisions, which omit the requirement that the killing be intentional, are many others which restrict the presumptions of malice and unlawfulness against a defendant to an intentional killing with a deadly weapon. *E.g., State v. Pasour,* 183 N.C. 793, 111 S.E. 779; *State v. Lane,* 166 N.C. 333, 81 S.E. 620; *State v. Quick,* 150 N.C. 820, 64 S.E. 168; *State v. Brittain,* 89 N.C. 481.

"When it is proved that one has killed *intentionally,* with a deadly weapon, the burden of showing justification, excuse, or mitigation is on him." Pearson, C.J., in *State v. Ellick,* 60 N.C. 450, 459 (Italics ours.) *(Cf. State v. Haywood, supra.)*

Since *State v. Gregory,* 203 N.C. 528, 166 S.E. 387 (a case in which the State's evidence tended to show that deceased's death was caused by the accidental discharge of a shotgun), the rule has been firmly established in our criminal jurisprudence that "the presumptions that a homicide was unlawful and done with malice do not arise against the slayer in a prosecution for homicide unless he admits or the State proves that he intentionally killed the deceased with a deadly weapon." *State v. Phillips,* 229, 538, 539, 50 S.E. 2d 306, 306; *accord, State v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83; *State v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *State v. Burrage,* 223 N.C. 129, 25 S.E. 2d 393; *State v. Keaton,* 206 N.C. 682, 175 S.E. 296.

Since *State v. Gordon, supra,* it has likewise been clear that:

> "(T)he expression, *intentional killing,* is not used in the sense that a specific intent *to kill* must be admitted or established. The sense of the expression is that the presumptions arise when the defendant *intentionally assaults* another with a deadly weapon and thereby proximately causes the death · of the person assaulted. . . . A specific intent *to kill,* while a necessary constituent of the elements of premeditation and deliberation in first degree murder, is not an element of second degree murder or manslaughter. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions . . . The presumptions do not arise if an instrument, which is *per se* or may be a deadly weapon, is not intentionally used as a weapon, *e.g.* from an accidental discharge of a shotgun." *Id.* at 358, 85 S.E. 2d at 323. (Citations omitted.)

Even after *State v. Gregory, supra,* the Court continued to quote the statement of Stacy, J. (later C.J.), in *State v. Benson, supra:*

> "The law then (after the State makes out a *prima facie* case of murder in the second degree) casts upon the defendant the burden of proving to the satisfaction of the jury — not by the greater weight of the evidence nor beyond a reasonable doubt—but simply to the satisfaction of the jury . . . , the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, *or that will excuse it altogether upon the grounds of* self-defense, *accident, or misadventure." Id.* at 799, 111 S.E. at 871. (Citations omitted; emphasis ours.)

*E.g., State v. Matthews,* 263 N.C. 95, 138 S.E. 2d 819; *State v. Wagoner, supra; State v. Burrage, supra; State v. Howell,* 218 N.C. 280, 10 S.E. 2d 815; *State v. Keaton, supra.* In these cases, however, as in *Benson* itself, the full implications of the statement with reference to accident or misadventure were not discussed or noticed. The statement was not the point on which the decision turned. The above statement, insofar as it relates to accident or misadventure, is disapproved. It could be correct only if a presumption of guilt arose against a defendant from the mere fact that he had killed deceased with a deadly weapon. It follows that the cases of *State v. Keever, supra,* and *State v. Haywood, supra,* are overruled. Of course, the circumstances of a killing alone are frequently sufficient to establish that it was intentionally done. For instance, if *A* should walk up to *B* on a public street, pull out a pistol and shoot him dead, the clear inference, nothing else appearing, would be that *A* intended to kill *B.*

It results that the following portion of his Honor's charge, assignment of error 82, as well as assignment of error 81, contains a fundamental error:

> "If the State has satisfied you beyond a reasonable doubt that . . . defendant *intentionally* shot and killed deceased . . . defendant would be guilty of murder in the second degree . . . *unless* . . . *the defendant, Mrs. Phillips, has established to your satisfaction the legal provocation which* will take from the crime the element of malice or which *would excuse her altogether upon the ground of misadventure or accident."*

His Honor erroneously put defendant's assertion of accidental killing in the same class with a plea of self-defense or killing in the heat of passion, both affirmative defenses, which, it is true, a defendant must prove to the satisfaction of the jury. *State v. Beachum,* 220 N.C. 531, 17 S.E. 2d 674. Although assignments of error 81 and 82 relate to the charge on second-degree murder and not voluntary manslaughter, of which defendant was convicted, yet we cannot say that those portions of the charge which imposed on defendant an erroneous burden of proof as to the charge of second-degree murder did not adversely affect her entire defense of accidental shooting. Defendant contends that the killing of her husband was an accident in the strictest meaning of the term and involved no negligence on her part. *In this sense* accident was relevant to the charge of involuntary manslaughter. It was not relevant as a denial of an intentional killing, since intent is not an element of involuntary manslaughter. Assignments of error 81 and 82 are sustained.

With reference to involuntary manslaughter, the court charged:

"In this connection, members of the jury, you will ask yourselves these questions. First, did the deceased, Harry Phillips, die as a result of any wound inflicted upon him by the defendant on the occasion in question? Second, did the defendant shoot and kill the deceased? *Third, did she kill him unintentionally? That is to say, if you do not find from the evidence and beyond a reasonable doubt that such killing was intentional but you find from the evidence and beyond a reasonable doubt that it was unintentional, was the defendant, Mrs. Phillips, culpably and criminally negligent in the manner in which she held and had the pistol there with her on the occasion in question?* And was such negligence on her part, if any you find, the proximate cause of the injury and death of the deceased? *Now, if you find from the evidence and beyond a reasonable doubt, members of the jury, that the truth requires an affirmative  answer to each and every one of these questions, then it would be your duty to find the defendant guilty of involuntary manslaughter.*" (Assignment 84).

In its relation to the rest of the charge, the jury could easily have understood this instruction to require the defendant not only to show *accident* but also to show it beyond a reasonable doubt, a compound error. Its mischief, as it relates to involuntary manslaughter, is that as to that crime intent was not an issue. The only question was whether defendant had been culpably negligent. "It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, . . . is involuntary manslaughter." *State v. Foust,* 258 N.C. 453, 459, 128 S.E. 2d 889, 893; *accord, State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354; *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485; *State v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768; *State v. Trollinger,* 162 N.C. 618, 77 S.E. 957; *State v. Limerick,* 146 N.C. 649, 61 S.E. 568.

Since there must be a new trial, we deem any discussion of the other assignments of error unnecessary.

New trial.